[No. C050727. Third Dist. May 30, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
JACK WILLIAM KINEY, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts II., III. and IV. of the Discussion.

**COUNSEL**

Mark Alan Hart, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Mary Jo Graves, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Charles A. French and Jeffrey D. Firestone, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MORRISON, J.**—On retrial, a jury convicted defendant of transporting methamphetamine (Health & Saf. Code, § 11379, subd. (a)), possession of methamphetamine for sale (Health & Saf. Code, § 11378), possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)), and possession of a smoking device (Health & Saf. Code, § 11364).[1] The court found defendant had three strike priors (Pen. Code, § 667, subds. (b)–(i); § 1170.12), and had served five prior prison terms (Pen. Code, § 667.5, subd. (a)). The court sentenced defendant to 25 years to life in prison plus five years.

Defendant appeals, challenging both his conviction and his sentence. He contends the trial court erred in admitting as evidence his closing statement from the first trial in which defendant represented himself, and erred in excluding evidence of the quality of methamphetamine defendant possessed. He contends two non-California prior prison terms (Nevada and Canada) must be stricken because they do not meet the requirements of Penal Code

---

[1] The prosecution agreed the conviction on count 3, possession of methamphetamine, should be stricken as it was a lesser included offense to possession for sale. By stipulation, the court dismissed count 3.

section 667.5, subdivision (a). He further contends that Penal Code section 668, which permits the use of foreign prior prison terms as enhancements, is unconstitutional unless it requires a showing that the foreign conviction satisfies due process. Finally, defendant contends the concurrent term on the misdemeanor count must be reduced to 120 days, the term imposed after defendant's first trial.

We find no evidentiary error and affirm the judgment of conviction. We accept the Attorney General's concessions that one of the prior Nevada prison term enhancements is flawed and that the sentence on the misdemeanor count must be reduced. We also find the Canadian prison term does not meet the requirements of Penal Code section 667.5. We modify the judgment to 28 years to life.

## FACTS

Officer Jamie Knox was working the graveyard patrol shift on February 24, 1999, when he saw a maroon Honda Civic followed by a white Ford Escort. The Civic had tinted rear windows and no passenger side mirror. Knox tried to stop the Civic, but the Ford would not let him get between the cars. Finally, when the Civic turned right, Knox was able to cut through a parking lot, pull behind the Civic and stop it.

Defendant was alone in the Civic; he identified himself, but had no driver's license or registration. Defendant was nervous and fidgety; he spoke rapidly. When defendant stepped out of the car, Knox noticed bulges in his pocket. Knox patted defendant down for weapons and felt a plastic bag with narcotics in it. The bag contained 7.8 grams of a substance containing methamphetamine. Defendant said he found it on the counter at his jobsite where he was a janitor. A further search revealed a plastic bag with methamphetamine residue and two bundles of money totaling $1,648, mostly $20 bills. A methamphetamine pipe was found between the front seats of the car. No scales, baggies or pay-owe sheets were found.

After defendant was arrested, the Ford returned with Ann VanZandt inside. Defendant said the drugs were hers. The officer searched VanZandt but found no evidence. Defendant admitted he was holding the drugs for VanZandt; he said he was teaching her how to cut and sell it. He claimed ignorance of the pipe.

At the first trial, defendant represented himself, exercising his right of self-representation under *Faretta v. California* (1975) 422 U.S. 806

[45 L.Ed.2d 562, 95 S.Ct. 2525]). During closing argument defendant said: "I can't deny I had the narcotics on me, the drugs, the methamphetamine in my pocket. The pipe, I didn't even know it was in the car. I said that originally. The evidence shows that, yeah, I was telling somebody else what to do with it. I wasn't making any money off of it. I don't have enough time to run around and do that. That's neither here nor there." Later defendant said: "What I was going to do with it at that time, I don't know. I wasn't loaded. I wasn't selling it. That's evident to both officers who testified. I am not a drug addict or anywhere near that. I am healthy. I must be out of that category." Defendant was convicted of the charged offenses and sentenced to 30 years to life in prison. On appeal, this court reversed his conviction because the trial court refused to grant defendant a reasonable continuance.

Defendant was represented by counsel at the second trial. The focus was on whether the drugs were possessed for sale or personal use. A criminalist testified 7.8 grams was definitely a usable amount. Detective Mike Sherlock gave an expert opinion that the methamphetamine was possessed for sale. His opinion was based on the amount, the cash, and defendant's statements. Detective Sherlock used both defendant's statements to the police and his statements in closing argument in the first trial in forming his opinion. Detective Sherlock testified there were 28.56 grams in an ounce and a quarter-ounce was common in trafficking; the most common sale was a quarter-gram for $20. He reasoned that if defendant had had an ounce and sold 21 grams of it, he would have had $1,680 in cash and about 7.5 grams left. Detective Sherlock read defendant's statement, "I'm not making any money off of it. I don't have enough time to run around and do that," as an admission that the methamphetamine was for sale.

Detective Sherlock testified based on his undercover experience. He had spoken with heavy users who claimed to use a gram per day, but that was not something that could be kept up for 23 days. He had never seen a user buy a large amount because it was cheaper. The quality of methamphetamine was fairly constant; it took only a small amount to have an effect.

The defense called Douglas Tapella, a convicted drug dealer serving time in prison, as an expert witness on possession for sale and use of methamphetamine. He testified the market rate for methamphetamine in Placer County was a fifth of a gram for $20; .875 of a gram (a "half-teener") for $40 to $50; a sixteenth of an ounce or 1.75 grams for $80 to $100; an "eight ball," 3.5 grams, for $140 to $150; a fourth of an ounce, seven grams, for $240 to $250; a half-ounce, 14 grams, for $300 to $400; and an ounce, 28 grams, for $600

to $800. The price depended on the quantity available and quality. He never bought less than a half-ounce for resale because there was no money to be made in smaller amounts. He had sold a fourth of an ounce for personal use. In his opinion the amount defendant possessed alone did not suggest sales without any pay-owe sheets, a scale, empty bags or multiple cell phones. Tapella declared that if defendant had had an ounce and sold three-quarters of it, he should have had $2,100 left.[2]

Tapella testified he had personally used two and a half to three grams of methamphetamine in a single day; he could go through 7.8 grams in three days. He checked the quality of the drug before he bought it and never kept large amounts of money on his person. In his opinion, the facts of the case were consistent with personal use. He doubted someone could be taught to cut methamphetamine without a scale. Under cross-examination Tapella admitted 7.8 grams could be for sale or for personal use.

David Taylor had met defendant at Eagle House Recovery and employed him in a janitorial business. He paid defendant in cash and had paid him $1,800 to $2,000. He thought defendant was using drugs. Defendant had gone on jobs with VanZandt.

The defense also called Jay Williams, a forensic toxicologist, as an expert witness. In his opinion defendant possessed the drugs for personal use. In reaching his opinion he considered the quantity and quality of the drugs and indicia of sales, such as a scale, baggies and residue. The prosecutor questioned him about defendant's statements; they did not affect Williams's opinion.

In rebuttal, Detective Sherlock confirmed his strong belief that the methamphetamine in this case was possessed for sale. Tapella testified he had both sold and possessed a fourth of an ounce for personal use.

## DISCUSSION

### I. *Admission of Defendant's Prior Closing Argument*

Defendant contends the trial court erred in admitting, over objection, statements he made in closing argument in his first trial. Defendant attacks the admission of this evidence on several grounds. First, he asserts that

---

[2] Tapella testified a fifth of a gram sold for $20; Detective Sherlock testified a fourth of a gram sold for $20.

admitting such statements penalizes him for exercising his Sixth Amendment right to represent himself. Next, he contends the statements should not have been admitted because statements by counsel are not evidence and, because the first case was reversed for what amounted to denial of counsel, it violated due process to admit a statement he made while acting as his constitutionally inadequate counsel. Finally, he contends that the statement was not made admissible by Detective Sherlock's reliance on it in forming his expert opinion.

The trial court admitted the statements as party admissions under Evidence Code section 1220.[3] Defendant does not dispute that the statements meet the requirements of Evidence Code section 1220; rather, he contends that the provisions of the Evidence Code must yield to policy considerations. Defendant argues he should not have to surrender his Fifth Amendment right against self-incrimination in order to exercise his Sixth Amendment right to represent himself at trial. He analogizes this case to *Simmons v. United States* (1968) 390 U.S. 377 [19 L.Ed.2d 1247, 88 S.Ct. 967], and *People v. Coleman* (1975) 13 Cal.3d 867 [120 Cal.Rptr. 384, 533 P.2d 1024].

In *Simmons v. United States, supra*, 390 U.S. 377, 394 [19 L.Ed.2d 1247, 1259], the United States Supreme Court held a defendant's testimony given in support of a motion to suppress evidence on Fourth Amendment grounds could not be admitted against him at trial unless the defendant did not object. In an unsuccessful attempt to suppress evidence of a suitcase and its contents seized from Mrs. Mahon's basement, the defendant had admitted ownership of the suitcase. (390 U.S. at p. 389.) The court noted that the defendant's testimony of ownership of the challenged evidence was often necessary to establish standing and therefore "his testimony is to be regarded as an integral part of his Fourth Amendment exclusion claim." (*Id.* at p. 391.) The court found it "intolerable that one constitutional right should have to be surrendered in order to assert another." (*Id.* at p. 394.)

In *People v. Coleman, supra*, 13 Cal.3d 867, 889, the California Supreme Court declared, as a judicial rule of evidence, that the testimony of a probationer at a revocation hearing is inadmissible, over objection, against the probationer in a subsequent trial on related criminal charges, except for purposes of impeachment or rebuttal. The court found an inherent conflict between the constitutional right to speak at a probation revocation hearing

---

[3] Evidence Code section 1220 provides: "Evidence of a statement is not made inadmissible by the hearsay rule when offered against the declarant in an action to which he is a party in either his individual or representative capacity, regardless of whether the statement was made in his individual or representative capacity."

(*Morrissey v. Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593]), and the Fifth Amendment right against self-incrimination. (*People v. Coleman, supra,* at pp. 873–878.) The court created an exclusionary rule to protect the policies behind probationer's right to be heard at the revocation hearing—to assure an informed, intelligent and just decision and to enhance the chance of rehabilitating probationers—and to remove any incentive to schedule the revocation hearing in advance of trial solely in hopes of obtaining incriminating evidence. (*Id.* at pp. 873–874, 891.)

Defendant contends that he was put in the "intolerable" position of having to surrender one constitutional right (the privilege against self-incrimination) in order to assert another (the right to represent himself at trial). We disagree. Defendant was not forced into a dilemma similar to that at issue in *Simmons v. United States, supra,* 390 U.S. 377 [19 L.Ed.2d 1247], where the defendant had to concede a possible element of the charged crime in order to assert a constitutional right, or *People v. Coleman, supra,* 13 Cal.3d 867, where the defendant had to forgo explaining or mitigating his probation violation to avoid subsequent prosecution.

■ The Constitution does not forbid ever requiring a defendant to choose between competing rights; the criminal process often requires " 'the making of difficult judgments.' " (*McGautha v. California* (1971) 402 U.S. 183, 213 [28 L.Ed.2d 711, 729, 91 S.Ct. 1454].) "The threshold question is whether compelling the election impairs to an appreciable extent any 'of the policies behind the rights involved." (*Ibid.*) We find no appreciable impairment of the policies behind *Faretta* rights by using a defendant's statements against him in a subsequent trial. The right of self-representation is based on the recognition that "[t]he right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails." (*Faretta v. California, supra,* 422 U.S. at pp. 819–820 [45 L.Ed.2d 562, 573].) A defendant's choice of self-representation "must be honored out of 'that respect for the individual which is the lifeblood of the law.' [Citation.]" (*Id.* at p. 834.) These policies are not impaired by holding a defendant to account for what he says while representing himself. Unlike in *Simmons v. United States, supra,* 390 U.S. 377 [19 L.Ed.2d 1247], defendant's inculpatory statements were not "an integral part" of asserting his *Faretta* rights. He was not faced with an intolerable choice between conflicting constitutional rights. Indeed, a defendant can—and many do—represent himself at trial without incriminating himself.

■ Defendant next contends the statements could not be admitted because he was acting as his own counsel when he said them and statements of counsel are not evidence. (*In re Zeth S.* (2003) 31 Cal.4th 396, 414, fn. 6 [2

Cal.Rptr.3d 683, 73 P.3d 541] ["It is axiomatic that the unsworn statements of counsel are not evidence"]; *People v. Superior Court (Crook)* (1978) 83 Cal.App.3d 335, 341 [147 Cal.Rptr. 856] [counsel's unsworn statements not evidence].) Unsworn statements of counsel are not evidence because unsworn testimony in general does not constitute "evidence" within the meaning of the Evidence Code. (*In re Heather H.* (1988) 200 Cal.App.3d 91, 95 [246 Cal.Rptr. 38].) Here defendant's statements were admitted in a subsequent trial, were presented in a transcript, a writing that meets the definition of evidence (Evid. Code, § 140), and qualify as an exception to the hearsay rule as a party admission under Evidence Code section 1220.

■ We recognize that statements of counsel in argument are not deemed judicial admissions unless they have the formality of an admission or a stipulation. (*Coats v. General Motors Corp.* (1934) 3 Cal.App.2d 340, 350 [39 P.2d 838] [incidental or ambiguous statements of counsel do not bind client]; *People v. Darden* (1927) 87 Cal.App. 181, 183 [261 P. 1045] [statement of district attorney in argument not an admission].) Thus, counsel's misstatements in closing argument would not be used against his client. (See *People v. Coleman* (1992) 9 Cal.App.4th 493 [11 Cal.Rptr.2d 800] [mistrial where counsel misstated evidence in opening statement].)

■ At first blush it may seem incongruous that counsel's incidental remarks are not used against his client, but those of a defendant representing himself may be, especially since a pro se defendant is held to the same standard as an attorney. (*People v. $17,522.08 United States Currency* (2006) 142 Cal.App.4th 1076, 1084 [48 Cal.Rptr.3d 519].) The reason for the difference is that counsel are agents of their client and cannot bind the client beyond the scope of their authority.

■ Further, an oral statement of counsel that is treated as an admission is binding on the client as a judicial admission. (*People v. Jackson* (2005) 129 Cal.App.4th 129, 161 [28 Cal.Rptr.3d 136].) Defendant's statements, by contrast, were not treated as binding judicial admissions.[4] Rather, defendant was free to challenge them and the jury could consider the context in which they were made in determining their probative value.

Defendant's assertion that statements he made while representing himself at his first trial cannot be used against him in a subsequent trial is tantamount to declaring that *Faretta* rights include a grant of testimonial immunity. That is not the law.

---

[4] We reject the Attorney General's argument that defendant's statements were "like a quasi-stipulation" by which he was bound. We do not recognize the term "quasi-stipulation" and have found no case that uses or explains the term.

Defendant next contends that admitting the statements violated due process. This court reversed the judgment from his first trial, stating: "The judgment must be reversed because defendant was not allowed a reasonable time to prepare for trial. This amounts to a denial of effective counsel, a structural error reversible per se. [Citation.]" Defendant contends that admitting statements he made while acting as constitutionally inadequate counsel violates his due process rights. He speculates that if he had been given sufficient time to prepare, "he may have thought through the implications of his argument to the jury and not made what was later treated as a party admission." In support of this argument defendant cites to *People v. Jones* (1998) 66 Cal.App.4th 760 [78 Cal.Rptr.2d 265].

In *Jones*, the defendant was convicted of murder and his petition for a writ of habeas corpus was granted on the ground the trial court had erroneously denied his request to represent himself. (*People v. Jones, supra,* 66 Cal.App.4th at pp. 763–764.) In the second trial he was again convicted. On appeal, he contended that because he had been denied his right of self-representation, the testimony of witnesses who became unavailable was not admissible under the prior testimony exception to the hearsay rule. The court rejected the defendant's challenge under the Evidence Code and the confrontation clause, finding cross-examination by his appointed counsel was sufficient. (*People v. Jones*, 66 Cal.App.4th at pp. 766–769.) In its discussion, the court noted that if the court had denied the defendant the right to counsel and forced him to represent himself at the first trial, the testimony of witnesses who subsequently became unavailable would have been inadmissible at the second trial. (*Id.* at p. 766.) Defendant contends *Jones* stands for the proposition that any action taken when the right to counsel was denied cannot stand. The *Jones* court, however, stated the reason the unavailable witness's testimony would not be admissible in the second trial was *not* because the right to counsel was violated, but because the assistance of counsel tends to promote effective cross-examination. (*Ibid.*) Thus, the discussion in *Jones,* with its citation to *Pointer v. Texas* (1965) 380 U.S. 400 [13 L.Ed.2d 923, 85 S.Ct. 1065], focused on the right of confrontation, not the right to counsel, and for this reason does not aid defendant.

■ The trial court did not err in admitting as evidence statements defendant made during closing argument in his first trial.

## II.–IV.*

. . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 807.

## DISPOSITION

We reverse the enhancements for the Nevada arson conviction and the Canadian robbery conviction prison terms. We reduce defendant's sentence on the misdemeanor count to a concurrent term of 120 days. As modified to 28 years to life, the judgment is affirmed. We direct the trial court to prepare and forward to the Department of Corrections and Rehabilitation a new abstract of judgment showing the modified sentence.

Scotland, P. J., and Sims, J., concurred.

A petition for a rehearing was denied June 25, 2007, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied October 10, 2007, S155059.