Filed 5/20/24  P. v. Chicas CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>　Plaintiff and Respondent,<br><br>v.<br><br>WILFREDO RODRIGUEZ CHICAS,<br><br>　Defendant and Appellant. | 2d Crim. No. B325820<br>(Super. Ct. No. 1455907)<br>(Santa Barbara County) |

　　Wilfredo Rodriguez Chicas appeals from the order summarily denying his petition for resentencing (Pen. Code, § 1172.6).[1]  He contends the record of conviction does not conclusively establish he was the actual killer or acted with malice aforethought, and his counsel's statements were barred by the attorney-client privilege.  We affirm.

---

　　[1] Undesignated statutory references are to the Penal Code.  The petition was filed pursuant to former section 1170.95, but we refer to the statute by its current designation, section 1172.6.

FACTUAL AND PROCEDURAL HISTORY

Chicas was charged with murder in 2015. The information alleged he "did unlawfully, and with malice aforethought, and by lying in wait, and was willful, deliberate, and premeditated, murder ALEJANDRO DIAZ ALVAREZ." (§ 187, subd. (a).) It also alleged a special circumstance of lying in wait (§ 190.2, subd. (a)(15)), and a special allegation that Chicas "intentionally and personally discharged a firearm" and "proximately caused great bodily injury" to Alvarez (§ 12022.53, subd. (d)).

*Preliminary hearing*

Santa Maria Police Sergeant Robert Morris testified that he responded to a 911 call and saw the victim lying on the ground unresponsive with blood on his face. Morris interviewed Chicas after he waived his *Miranda*[2] rights.

Chicas told Morris that he and G.G. had been in "a common law marriage." They separated but he still had feelings for her. He was aware she was having a relationship with Alvarez. He said Alvarez and two of Alvarez's nephews previously brandished firearms at him.

Chicas said that on the morning of the shooting, he drove from G.G.'s residence to his own apartment to retrieve his firearm, and then drove to Alvarez's apartment "to take care of the victim." Chicas stood behind some bushes for 10 minutes so Alvarez would not see him. Chicas came out of the bushes when he saw Alvarez. Alvarez grabbed Chicas, and Chicas pushed him down onto his hands and knees. Chicas said he tried to shoot Alvarez but shot himself in the arm. Chicas admitted he then shot Alvarez in the head.

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436.

2

*Guilty plea*

Chicas pleaded guilty. The guilty plea form listed the charges as "PC 187 Murder–1st deg. willful, premeditated, w/ malice aforethought and by lying in wait," and "PC 12022.53(d)–personal intent'l disc. firearm–GBI." Chicas initialed the statement that he pleaded guilty "to the charges listed."

Before the plea was entered, defense counsel made a "statement for the record . . . to clear it up in the future if somebody was to look and say why did this person plead guilty to a case that's 50 years to life." Counsel said Chicas told him he did not want to go to trial and risk receiving life without parole. He continued: "[M]y client indicates that he was threatened by this person he ultimately shot in the past, but a period of time went by and then in essence he ambushed the person. When they came out he shot him. He's confessed to all this. I see absolutely no defense to this; that's why I'm going along, although I normally wouldn't want to plead somebody guilty to 50 years to life."

Chicas confirmed he "heard [his] attorney speak a moment ago" and "agree[d] with everything [his] attorney said." When the prosecutor asked Chicas how he pleaded to "murder in the first degree, willfully with premeditation and deliberation and malice aforethought and by lying in wait," Chicas responded, "Guilty." He admitted the allegation that he "personally intentionally discharged a firearm that resulted in great bodily injury upon Mr. Alvarez." (§12022.53, subd. (d).)

The court asked counsel if he and his client stipulated to a factual basis for the plea. Counsel agreed, and stated for the factual basis: "[H]e's charged with, agrees with the fact that he

3

laid in wait for the victim in this case to come out and that he shot him." Chicas and his counsel also stipulated to a factual basis based on the police reports and preliminary hearing transcript.

On the prosecutor's motion, the court dismissed the special circumstance of lying in wait. The court sentenced Chicas to 25 years to life for murder and 25 years to life consecutive for the firearm allegation for a total sentence of 50 years to life.

*Probation report*

The postsentence probation report (§ 1203c, subds. (a)(1) & (b)) included a description of the offense based on the police reports. It stated that police found Alvarez lying dead with blood on his face. Alvarez's common law wife told police she heard two shots shortly after Alvarez walked outside. She said Alvarez was having an affair with Chicas's girlfriend, G.G. Police contacted G.G., who told police Chicas had previously threatened to kill Alvarez because of the affair.

Police arrested Chicas, who admitted shooting Alvarez. Chicas said he waited outside Alvarez's apartment for about 10 minutes, then struggled with him. Chicas shot himself in the arm. When Alvarez fell to the ground, Chicas aimed the handgun at his head and fired one round. He said "he did it to Alvarez before Alvarez could do something to him."

*Resentencing petition*

In 2022, Chicas filed a petition for resentencing (§ 1172.6). He checked a box on the form petition stating that the information "allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in

4

a crime." He also checked a box that stated, "I could not presently be convicted of murder . . . because of changes made to Penal Code §§ 188 or 189, effective January 1, 2019." Counsel was appointed. (§ 1172.6, subd. (b)(3).)

The prosecution's written response to the petition (§ 1172.6, subd. (c)) contended Chicas was not eligible for resentencing because he pleaded guilty to premeditated murder with malice aforethought, and was "the sole perpetrator" who shot and killed the victim. The response attached documents including the plea form, transcript of entry of the guilty plea, and probation report. The prosecution asked the court to take judicial notice of the preliminary hearing transcript.

At the hearing, Chicas's attorney said she was not filing a reply to the People's response. (§ 1172.6, subd. (c).) She said, "the elements of the substantive offense, even notwithstanding the 12022.53 enhancement, conclusively negate the allegations of this particular petition . . . I don't believe there's anything I could legally argue that I would be willing to say on that." The prosecutor said Chicas was ineligible for resentencing because he was "the personal shooter." Defense counsel did not respond. The court orally denied the petition.

The court also issued a written order denying the petition stating: "The court has independently reviewed the record of conviction including the preliminary hearing transcript of which it takes judicial notice, the plea form, the abstract of judgment, the postconviction probation report, the waiver of constitutional rights and the transcripts of both the plea and sentencing. Without making any credibility determinations the allegations of the petition are conclusively negated. The petitioner was the actual killer. The victim was killed by a single shooter lying in

5

wait. At the time of the plea to first-degree murder and a special allegation under 12022.53c [*sic*], the defendant acknowledged that he was the shooter and that he pled guilty to avoid a potential life without the possibility of parole sentence. [¶] The petitioner has failed to establish a prima facie case and the petition is denied."

## DISCUSSION

Section 1172.6 provides for resentencing a murder conviction based on an accusatory pleading "that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime," and "[t]he petitioner could not presently be convicted of murder . . . because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(1) & (3).) These "changes benefit some *accomplices* to murder but they never affect the murder liability of the *killers*." (*People v. Mares* (2024) 99 Cal.App.5th 1158, 1164, review granted May 1, 2024, S284232, italics added.) The legislation "ensure[s] that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1(f), quoted in *People v. Curiel* (2023) 15 Cal.5th 433, 448.)

### *Prima facie case*

If a section 1172.6 petition makes a prima facie case for relief, the court must issue an order to show cause and set an evidentiary hearing. (§ 1172.6, subds. (c) & (d).) "[A] trial court can rely on the record of conviction in determining whether that . . . prima facie showing is made." (*People v. Lewis* (2021) 11

6

Cal.5th 952, 970.) " '[I]f the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Id.* at p. 971.)

"We independently review a trial court's determination on whether a petitioner has made a prima facie showing." (*People v. Harden* (2022) 81 Cal.App.5th 45, 52.)

*Guilty plea*

A guilty plea to murder does not necessarily warrant summary denial of a resentencing petition if the defendant was not the actual killer and could have been convicted under a now-invalid theory. (*People v. Rivera* (2021) 62 Cal.App.5th 217, 223-225.) For example, a plea of guilty to premeditated and deliberate murder may not warrant summary dismissal of the resentencing petition where the information alleges a codefendant was the actual killer. (*People v. Eynon* (2021) 68 Cal.App.5th 967, 970-971.) But where "a defendant admit[s] *more* than the elements of the offense charged, . . . such additional admissions may preclude relief under section [1172.6]." (*Rivera*, at p. 234.)

Chicas made such additional admissions here. He was asked how he pleaded to "murder in the first degree, willfully with premeditation and deliberation and malice aforethought and by lying in wait," and responded, "Guilty." This constituted "a binding admission" that precludes section 1172.6 relief. (*People v. Romero* (2022) 80 Cal.App.5th 145, 152-153 [defendant admitted allegation he " 'acted intentionally, deliberately and with premeditation' "].)

Counsel's statement about why Chicas was pleading guilty also described him as the sole killer. Counsel stated: "[H]e

7

ambushed the person.  When they came out he shot him.  He's confessed to all this."  Counsel's statements were not " 'improvidently or unguardedly made.' "  (*People v. Jackson* (2005) 129 Cal.App.4th 129, 161.)  Instead, counsel placed on the record an explanation for pleading guilty that would be relevant if there were a later claim of ineffective assistance of counsel, i.e., that Chicas wished to plead guilty to avoid a sentence of life without parole.  (See *People v. Osband* (1996) 13 Cal.4th 622, 700.)

Chicas contends that unsworn statements of counsel are not evidence.  (*In re Zeth S.* (2003) 31 Cal.4th 396, 413-414, fn. 11.)  But because Chicas personally agreed on the record with his attorney's statements, they constitute admissions of a party. (Evid. Code, § 1220; *People v. Kiney* (2007) 151 Cal.App.4th 807, 812-813.)

Counsel also stated, as part of the factual basis for the guilty plea, that Chicas "agrees with the fact that he laid in wait for the victim in this case to come out and that he shot him."  The court was required to find a factual basis because there was a negotiated disposition to strike the special circumstance. (§ 1192.5, subd. (c); *People v. Hoffard* (1995) 10 Cal.4th 1170, 1181.)  A factual basis may be established by counsel stating facts that support a prima facie case "based in part on admissions the client has made or on other defense investigation."  (*People v. Palmer* (2013) 58 Cal.4th 110, 119.)  Accordingly, counsel's statements were not "incidental remarks," but had "the formality of an admission or a stipulation" that constituted "judicial admissions."  (*People v. Kiney*, *supra*, 151 Cal.App.4th at p. 815.)

*Attorney-client privilege*

Chicas contends his counsel's statements amount to

8

"incompetent evidence" because the record does not show a waiver of the attorney-client privilege (Evid. Code, § 954). But Chicas concedes his counsel's statements may have been based on information from police reports or other documents. If any of the information was based on attorney-client communications, Chicas waived the privilege by failing to object to their disclosure. (Evid. Code, § 912, subd. (a).) During the change of plea colloquy, Chicas confirmed he "heard [his] attorney speak a moment ago" and "agree[d] with everything [his] attorney said."

Chicas cites no authority that a waiver must be placed on the record before attorney-client communications are disclosed. (See *Klang v. Shell Oil Co.* (1971) 17 Cal.App.3d 933, 938 [implied waiver of privilege].) We will not assume that Chicas did not consent to disclosure or that counsel violated the privilege. Moreover, disclosure of client communications is permitted for "the accomplishment of the purpose for which the lawyer is consulted." (Evid. Code, § 952.) The information disclosed here facilitated a disposition that would allow the possibility of parole.

*Preliminary hearing transcript and probation report*

The parties stipulated to the preliminary hearing transcript as part of the factual basis for the plea. Thus, it is part of the record of conviction and was properly considered by the trial court to summarily deny the section 1172.6 petition. (*People v. Davenport* (2021) 71 Cal.App.5th 476, 481; *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1161, 1166.) The court properly granted the prosecution's uncontested request for judicial notice of the preliminary hearing transcript when considering the section 1172.6 petition. (Evid. Code, §§ 452, subd. (d), 453; *People v. Arnold* (2023) 93 Cal.App.5th 376, 391

[failure to object to consideration of preliminary hearing transcript forfeited issue].)

The preliminary hearing transcript establishes that Chicas told police he obtained his firearm and went to Alvarez's home "to take care of the victim before the victim did anything to him." Chicas admitted he then shot Alvarez in the head. Nothing in the record even hints that Chicas killed Alvarez in the course of committing some other felony, or that some other perpetrator participated in the murder.

"[H]earsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the [resentencing] hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule." (§ 1172.6, subd. (d)(3).) Although the preliminary hearing transcript included some hearsay, Sergeant Morris' testimony about his observations of the victim were not hearsay. And Chicas's statements to Morris were admissible pursuant to the hearsay exception for party admissions. (Evid. Code, § 1220; *People v. Zack* (1986) 184 Cal.App.3d 409, 416-417.)

The probation report similarly established that Chicas was the actual killer. "Ordinarily, a probation officer's report is not part of the record of conviction." (*People v. Del Rio* (2023) 94 Cal.App.5th 47, 56.) But the probation report here summarized the police reports, which the parties stipulated were part of the factual basis for the plea. (See *People v. Holmes* (2004) 32 Cal.4th 432, 436 [factual basis based on stipulation to statements in police reports].)

In our view, reliance on the preliminary hearing transcript and probation report did not involve " 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*People v.*

10

*Lewis, supra,* 11 Cal.5th at p. 972.) "Without weighing conflicting evidence or making credibility determinations, the record of conviction [here] irrefutably establishes as a matter of law" that Chicas was the actual killer. (*People v. Harden, supra,* 81 Cal.App.5th at p. 56.)

As in *People v. Pickett* (2023) 93 Cal.App.5th 982, review granted October 11, 2023, S281643, "uncontroverted evidence from the preliminary hearing transcript show[ed] that the defendant acted alone in killing the victim." (*Id.* at p. 990, citing *People v. Patton* (2023) 89 Cal.App.5th 649, 657, review granted June 28, 2023, S279670.) "[T]here is nothing to suggest that any other person was involved in the incident. The inference that [appellant] acted alone and was the actual killer is uncontradicted and compelling." (*Pickett,* at p. 990.) And as in *Pickett,* Chicas "offered no evidence or argument [in the trial court] that might have raised a factual issue as to his involvement in [the victim's] death. We can thus assess [appellant's] prima facie showing without 'engag[ing] in "factfinding involving the weighing of evidence" ' or making any credibility determinations [citation], because [appellant] offered no evidence to weigh, and did not dispute the evidence." (*Ibid.*; *People v. Mares, supra,* 99 Cal.App.5th at p. 1171, review granted.)

Denial of the resentencing petition here is consistent with *People v. Curiel, supra,* 15 Cal.5th 433, where the victim was killed by a codefendant. (*Id.* at p. 442.) In *Curiel,* the gang-murder special circumstance established intent to kill, but was insufficient to summarily deny a section 1172.6 petition because it did not establish that the defendant had knowledge of the actual killer's intent. (*Curiel,* at p. 468.) In contrast here, Chicas acted alone and with malice aforethought, deliberation,

11

and premeditation when he shot and killed Alvarez.

Chicas suggests a hypothetical situation in which he laid in wait for Alvarez, shot him causing great bodily injury, and some unknown person then killed him. The record of conviction is to the contrary. Chicas got his firearm to "take care of the victim." He hid in the bushes until he saw Alvarez and, after pushing him to the ground, shot him in the head. Nothing in the record suggests that any other perpetrator was involved. This case is thus unlike *People v. Maldonado* (2023) 87 Cal.App.5th 1257, where the evidence was conflicting whether Maldonado was the actual killer, aided and abetted the murder, or merely saw the victim's body afterward. (*Id.* at pp. 1259-1260.)

This case is also unlike *People v. Rivera*, *supra*, 62 Cal.App.5th 217, which reversed summary denial of a section 1172.6 petition. *Rivera* held that a defendant may make a prima facie case for relief "by identifying a scenario under which he or she was guilty of murder only under a now-invalid theory," even if that theory is not reflected in the grand jury transcript or guilty plea. (*Rivera*, at pp. 224, 238.) But the court "le[ft] open the possibility" that a facially sufficient petition could be denied based on a grand jury transcript if the petitioner "does not in any way contest the evidence presented to the grand jury." (*Id.* at p. 238.)

The same principle applies to the preliminary hearing transcript here. Chicas filed a form petition with the required allegations, but did not challenge the evidence in the preliminary hearing transcript or contest the prosecution's contention that he was "the sole perpetrator" who killed the victim by shooting him. Instead, defense counsel correctly noted that the record "conclusively negate[s] the allegations of this particular petition."

12

As in *People v. Nguyen, supra*, 53 Cal.App.5th 1154, 1167, "[t]here is no mention in the record, prior to the guilty pleas, of any underlying felony that could be used as the basis of felony-murder liability, or any target offense that could be used as the basis of liability under the natural and probable consequences doctrine." Instead, the record shows Chicas procured his firearm, went to the victim's residence, hid in the bushes, and then killed him by shooting him in the head. And because the record "revealed no indication of any accomplice" and "[d]efense counsel did not argue or even insinuate that any other person was responsible for [the victim's] death," the court properly concluded that Chicas was the actual killer and did not make a prima facie case for relief. (*People v. Bodely* (2023) 95 Cal.App.5th 1193, 1201.)

## DISPOSITION

The order denying the petition for resentencing is affirmed.

<u>NOT TO BE PUBLISHED.</u>

BALTODANO, J.

We concur:

GILBERT, P.J.

CODY, J.

13

John F. McGregor, Judge

Superior Court County of Santa Barbara

_____

Wayne C. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Heidi Salerno, Deputy Attorneys General, for Plaintiff and Respondent.