Filed 3/19/26  P. v. Maravilla CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H052592 |
| Plaintiff and Respondent, | (Santa Cruz County Super. Ct. No. 23CR02274) |
| v. | |
| JOEL ADALBERTO MARAVILLA, | |
| Defendant and Appellant. | |

Defendant Joel Adalberto Maravilla pleaded no contest to several sexual offenses involving the 15-year-old victim Jane Doe.[1]  At sentencing, the trial court suspended imposition of sentence, placed Maravilla on three years' probation, and ordered him to serve 270 days in jail.

Maravilla appeals from the restitution order directing payments to the California Victim Compensation Board (CalVCB), as well as Jane Doe's mother, N.B.[2]  Maravilla argues the trial court erred by awarding $6,650 to reimburse N.B. for her out-of-pocket expenses incurred for Jane Doe's mental health treatment.

---

[1] The victim was referred to as Jane Doe in the proceedings below and we maintain that designation to protect her privacy interests.  (Cal. Rules of Court, rule 8.90(b)(4).)

[2] We refer to the victim's parents by first and last initial to protect their privacy interests and the victim's privacy interests.  (Cal. Rules of Court, rule 8.90(b)(10), (11).)

Maravilla also argues that his trial counsel was constitutionally ineffective for failing to object to the $1,000 ordered paid to CalVCB as reimbursement for installation of a residential security system.

As we explain below, we conclude that Maravilla's arguments have no merit, and we will affirm the restitution order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Procedural background

On May 25, 2023, the Santa Cruz County District Attorney filed a criminal complaint charging Maravilla with one count of oral copulation of a person under 16 (Pen. Code,[3] § 287, subd. (b)(2); count 1), one count of committing a lewd act upon a child (§ 288, subd. (c)(1); count 2), one count of unlawful contact with a minor with the intent to commit a sexual offense (§ 288.3, subd. (a); count 3), one count of meeting a minor for lewd purposes (§ 288.4, subd. (b); count 4), one count of sexual penetration by a foreign object (§ 289, subd. (i); count 5), one count of possession of matter depicting a minor engaging in sexual conduct (§ 311.11, subd. (a); count 6), one count of using a minor for sex acts (§ 311.4, subd. (c); count 7), and one count of unlawful sexual intercourse with a person under 18 years of age (§ 261.5, subd. (d); count 8).

On May 10, 2024, pursuant to a negotiated disposition, Maravilla pleaded no contest to one felony count of unlawful contact with a minor with the intent to commit a violation of section 289, subdivision (i) (count 3); one count of misdemeanor possession of matter depicting a minor engaging in sexual conduct (count 6); and one felony count of unlawful sexual intercourse with a person under 18 years of age (count 8).  In exchange for his pleas, the remaining charges were

---

[3] Unspecified statutory references are to the Penal Code.

dismissed and Maravilla was to be sentenced to no more than 364 days and placed on probation.

At the July 11, 2024 sentencing hearing, the trial court sentenced Maravilla to 270 days in county jail and placed him on three years' formal probation.  The trial court ordered Maravilla to register as a sex offender pursuant to section 290 and, finding "clear and convincing evidence that [Jane Doe] [had] been harassed by [Maravilla]," issued a 10-year criminal protective order.

Following a contested restitution hearing on September 19, 2024, the trial court ordered that Maravilla pay restitution in the amount of $10,133.00 to CalVCB, $5,924.59 to Jane Doe's father, M.B., and $12,332.40 to N.B.

Maravilla timely appealed.

### B. Factual background[4]

On May 17, 2023, a therapist called the Capitola Police Department and reported that her patient, 15-year-old Jane Doe, had disclosed a sexual relationship with Maravilla, a 27-year-old man.  The therapist told police that Jane Doe wanted her to inform the authorities about the relationship "as a means for her to get out of it and hold [Maravilla] accountable."

Police officers met Jane Doe at the hospital that same day after she underwent a Sexual Assault Response Team (SART) examination.  Jane Doe told officers that she met Maravilla when he was working at a market in Scotts Valley. Jane Doe told Maravilla she was 18 years old and gave him her phone number. After Maravilla asked for a photo of her identification, Jane Doe admitted to him that she was only 15 years old.

---

[4] As Maravilla pleaded no contest prior to the preliminary hearing, we derive the factual background from the probation report and other documents in the record on appeal.

3

Maravilla and Jane Doe first had intercourse in his car in January 2023. "On other occasions, [Maravilla] picked up [Jane Doe] at school and took her back to his apartment to engage in sex (where he resided with his girlfriend of seven years and his mother)." Maravilla told Jane Doe not to tell anyone they were having sex because "he could go to jail for the rest of his life." Jane Doe gave her phone, tablet, and laptop to police, which contained "many" text messages "of a sexual nature" she and Maravilla exchanged. She and Maravilla exchanged nude pictures of themselves and Jane Doe "sent [Maravilla] a video of herself simulating masturbation."

On May 23, 2023, police officers had Jane Doe place a pretext call to Maravilla. In that call, Maravilla admitted that he knew Jane Doe was 15 years old and that they had a sexual relationship. Maravilla also acknowledged that he and Jane Doe had had sex the week prior.

After obtaining an arrest warrant, police officers arrested Maravilla on May 26, 2023.

## II. DISCUSSION

### A. Out-of-pocket expenses for Jane Doe's mental health treatment

Maravilla argues the trial court erred by ordering that he pay $6,650 to reimburse N.B. for the out-of-pocket expenses she incurred for Jane Doe's mental health treatment as part of his victim restitution. Maravilla contends that the trial court improperly relied on its own knowledge of CalVCB policies and procedures, rather than the evidence presented at the restitution hearing, to issue its restitution order. We disagree.

#### 1. Additional background

Prior to sentencing, N.B. submitted a form to the Santa Cruz County District Attorney's Office requesting restitution in the amount of $12,332.40, consisting of $6,650 in out-of-pocket medical expenses related to Jane Doe's

4

mental health treatment plus $5,682.40 in travel expenses.  N.B. attached supporting documentation to her request, including an email from Jane Doe's mental health treatment provider dated January 3, 2024, explaining that she would owe "a deductible of $5,500 plus a daily coinsurance [charge] of $235.40 with a total maximum due during 2024 of $6,650."  N.B. attached a credit card statement reflecting her payment of $6,650 to the treatment provider on January 4, 2024.[5]

On July 11, 2024, CalVCB requested restitution in the amount of $10,133, consisting of $9,133 for the benefits paid for Jane Doe's mental health treatment, plus $1,000 for a residential security system.

At sentencing, the trial court calendared a restitution hearing for August 21, 2024.[6]

At the contested restitution hearing, defense counsel objected to the $9,133 in mental health treatment costs requested by the CalVCB on the ground that the district attorney had failed to show that "the offenses committed by [] Maravilla caused the damages requested."  Defense counsel also challenged N.B.'s request for her $6,650 insurance deductible because there was no "documentation either way, that the family was compensated for that expense by [CalVCB]" and it appeared she was "asking for double the damages."  In conclusion, defense counsel stated that he "object[s] to frankly all of the expenses."

In response, the district attorney acknowledged that Jane Doe "had mental health issues" but "went into … treatment after this relationship with [] Maravilla."  The district attorney stated that Jane Doe's family was not asking for

---

[5] In addition to the challenged amounts awarded for N.B.'s expenses, M.B. requested, and Maravilla was ordered to pay, $5,924.59 for travel expenses associated with Jane Doe's mental health treatment.  Maravilla does not challenge that aspect of the restitution order.

[6] At the request of defense counsel, the restitution hearing was subsequently continued to September 19, 2024.

restitution "for things that happened previously" and that Jane Doe's "other issues" made her "a[n] impressionable and perfect person to manipulate." The district attorney rejected defense counsel's claim of "double dipping" because "the $6,650 was specifically [] not covered by their insurance" and "CalVCB charges the mental health professionals directly."

In rebuttal, defense counsel challenged the district attorney's representation that CalVCB "bill[s] the providers directly," stating, "I don't know that, and I don't have any documentation of that." The trial court interjected, "I know that."

After the parties submitted, the trial court ruled, as follows: "I hear [defense counsel's] argument about causation, but one of the problems with people, especially with mental illness, is that conduct by the defendant can exacerbate the mental illness problems that they already had, so I am not … buying your argument that there is no causation here. … I know that the [CalVCB] pays directly to the treatment provider. [Jane Doe's] [f]amily's claiming that they paid other out of pocket expenses. And therefore I'm going to order restitution as to— as outlined in the … memorandum, $10,133.00 payable to the [CalVCB], $5,924.59 for [M.B's] travel and other expenses, and $12,333.40 to [N.B.]."

### 2. *Applicable legal principles*

The California Constitution gives victims of crime the right to receive restitution from criminal defendants: "Restitution shall be ordered from the convicted wrongdoer in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss." (Cal. Const., art. I, § 28, subd. (b)(13)(B).) To effect this constitutional mandate, section 1202.4 requires the payment of victim restitution "in an amount established by court order, based on the amount of loss claimed by the victim ... or any other showing to the court." (§ 1202.4, subd. (f).) A "victim" for purposes of restitution includes not only the actual victim of the offense, but also "shall include all of the following: [¶¶] (3) A

6

person who has sustained economic loss as the result of a crime and who satisfies any of the following conditions: [¶] (A) At the time of the crime was the parent, grandparent, sibling, spouse, child, or grandchild of the victim." (§ 1202.4, subd. (k)(3)(A).)

At a contested restitution hearing, "[o]nce the victim makes a prima facie showing of economic losses incurred as a result of the defendant's criminal acts, the burden shifts to the defendant to disprove the amount of losses claimed by the victim. [Citation.]" (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1543 (*Gemelli*).) "[T]he standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt. [Citation.]" (*People v. Baker* (2005) 126 Cal.App.4th 463, 469.) "In considering restitution awards for *economic* losses, it has been held that 'a prima facie case for restitution is made by the People based in part on a victim's testimony on, or other claim or statement of, the amount of his or her economic loss.' [Citation.]" (*People v. Lehman* (2016) 247 Cal.App.4th 795, 801 (*Lehman*).)

"As a general matter, we review restitution orders for an abuse of discretion. [Citation.] However, where the specific issue is whether a court has the authority to issue restitution, we review that question of law independently. [Citation.] And where the specific issue is whether the court's factual findings support restitution, we review those findings for substantial evidence." (*In re S.O.* (2018) 24 Cal.App.5th 1094, 1098 (*S.O.*).) No abuse of discretion exists where there is a rational and factual basis for the amount of restitution ordered. (*People v. Gomez* (2023) 97 Cal.App.5th 111, 116.)

### 3. Analysis

In this case, the trial court's order directing that Maravilla pay $6,650 in restitution to N.B. was supported by the documentation N.B. submitted, specifically the email from the mental health facility explaining that she had a

balance due of $6,650 for Jane Doe's treatment and the credit card statement reflecting N.B.'s payment of that amount on January 4, 2024.  This evidence met N.B.'s burden of making a prima facie showing for restitution.  (*Lehman*, *supra*, 247 Cal.App.4th at p. 801.)

The burden thus shifted to Maravilla to present evidence rebutting or otherwise disputing the amount of N.B.'s losses.  (*Gemelli*, *supra*, 161 Cal.App.4th at p. 1543.)  Defense counsel's statement that N.B. was reimbursed for her out-of-pocket expenses "because that is what the [CalVCB] does" is not evidence.  "Unsworn statements of counsel are not evidence because unsworn testimony in general does not constitute 'evidence' within the meaning of the Evidence Code.  [Citation.]"  (*People v. Kiney* (2007) 151 Cal.App.4th 807, 815.)  Because Maravilla failed to present admissible evidence supporting his assertion that CalVCB reimburses victims for insurance deductibles, we need not decide whether it was improper for the trial court to rely on its own knowledge of CalVCB's procedures or the district attorney's (also unsupported) assertion that "CalVCB charges the mental health professionals directly."  Accordingly, Maravilla failed to meet his burden to disprove N.B.'s claim for $6,650 in restitution.

The trial court's order that N.B. was entitled to $6,650 in restitution was supported by substantial evidence and was not an abuse of discretion.

### B. No ineffective assistance of counsel

Maravilla argues that his trial court counsel was ineffective for failing to object to the court ordering $1,000 in restitution to CalVCB for a residential security system.  In his view, restitution for a residential security system is only allowed where a defendant has been convicted of a violation of section 273.5 or a violent felony offense listed in section 667.5, subdivision (c).  We disagree.

### 1. Additional background

As discussed above, at the contested restitution hearing, CalVCB requested restitution in the amount of $10,133, which included $1,000 for a residential security system. Defense counsel objected that, as to the restitution related to mental health treatment and "frankly all of the expenses," the district attorney had not shown causation. Defense counsel did not specifically object to the $1,000 for the security system on the ground that section 1202.4 did not authorize restitution for that expense since Maravilla had not been convicted of a violation of section 273.5 or any of the violent felony offenses listed in section 667.5, subdivision (c).

### 2. Applicable legal principles

The standard for evaluating claims that counsel provided constitutionally ineffective assistance is set forth in *Strickland v. Washington* (1984) 466 U.S. 668, 687–694. This standard provides that: "[t]o secure reversal … upon the ground of ineffective assistance of counsel under either the state or federal Constitution, [an appellant] must establish (1) that ... counsel's performance fell below an objective standard of reasonableness, i.e., that counsel's performance did not meet the standard to be expected of a reasonably competent attorney, and (2) that there is a reasonable probability that [appellant] would have obtained a more favorable result absent counsel's shortcomings." (*People v. Cunningham* (2001) 25 Cal.4th 926, 1003.) "A reviewing court can begin an ineffective assistance of counsel inquiry with either element and need not address both elements if one is not satisfied. [Citations.]" (*In re Tellez* (2024) 17 Cal.5th 77, 88 (*Tellez*).)

"On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All

other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

It is the appellant's burden to demonstrate by a preponderance of the evidence that his or her counsel's performance fell below an objective standard of reasonableness. (See *In re Thomas* (2006) 37 Cal.4th 1249, 1257.) "Unless [an appellant] establishes the contrary, we shall presume that 'counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy.' [Citation.]" (*People v. Ledesma* (2006) 39 Cal.4th 641, 746.) Further, "[f]ailure to raise a meritless objection is not ineffective assistance of counsel." (*People v. Bradley* (2012) 208 Cal.App.4th 64, 90.)

### 3. Analysis

Maravilla argues that restitution for a home security system is only authorized under section 1202.4 where a defendant is convicted of "a violation of Section 273.5, or a violent felony as defined in subdivision (c) of Section 667.5," citing section 1202.4, subdivision (f)(3)(J).[7] Maravilla was not convicted of any offenses encompassed within section 1202.4, subdivision (f)(3)(J) and, accordingly, the trial court was not *required* to order restitution for the residential security system under that statute. However, that subdivision is not the *sole* source of a court's authority to order restitution and the plain language of section

---

[7] Section 1202.4, subdivision (f)(3) provides in pertinent part that "the restitution order … shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to, all of the following: [¶¶] (J) Expenses to install or increase residential security incurred related to a violation of Section 273.5, or a violent felony as defined in subdivision (c) of Section 667.5, including, but not limited to, a home security device or system, or replacing or increasing the number of locks."

1202.4, subdivision (f)(3) makes clear that the trial court has ample *discretionary* authority to craft a restitution order "sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, *including, but not limited to*" the categories of expenses listed in subdivisions (f)(3)(A)–(L). (Italics added.) As Maravilla acknowledges, other courts of appeal have so held. (See *People v. Henderson* (2018) 20 Cal.App.5th 467, 472 (*Henderson*) [victim entitled to restitution under section 1202.4 for installation of security system due to defendant's conduct regardless of crime of conviction]; accord, *People v. Brooks* (2018) 23 Cal.App.5th 932, 946.)

Maravilla urges us to reject the reasoning of *Henderson* and *Brooks* and instead follow *People v. Salas* (2017) 9 Cal.App.5th 736 (*Salas*). In *Salas*, the Court of Appeal analyzed the legislative history of section 1202.4 and canons of statutory construction before ultimately concluding the Legislature intended to unconditionally exclude restitution for home security systems unless it fell within subdivision (f)(3)(J) of section 1202.4. We respectfully disagree with the reading of the statute advanced in *Salas*. The statute's use of the phrase "including, but not limited to" is inclusive rather than exclusive. As noted by *Henderson*, the mandatory restitution for home security systems set forth in section 1202.4, subdivision (f)(3)(J) "does not operate to bar discretionary restitution orders for home security systems where such orders may be otherwise appropriate." (*Henderson*, *supra*, 20 Cal.App.5th at p. 473.)[8]

In this case, the probation report related the facts of Maravilla's offenses, and, at sentencing, the trial court issued a ten-year protective order, finding there

---

[8] A defendant subjected to such a restitution order is obviously not without recourse, as he or she can always argue on appeal that the trial court abused its discretion in issuing that order. (*S.O.*, *supra*, 24 Cal.App.5th at p. 1098.)

was "clear and convincing evidence" Maravilla had harassed Jane Doe. Consequently, there is substantial evidence to support a finding that the offenses of which Maravilla was convicted resulted in the victims—which by statute include Jane Doe's parents for purposes of restitution—continuing to fear for Jane Doe's safety. Based on this record, the court could have reasonably concluded that a residential security system was an appropriate expense by the victims to both encourage and verify Maravilla's compliance with the 100 yard stay away order from Jane Doe and her residence. The trial court thereby had the statutory authority to order restitution for a home security system on the ground that the victim's family incurred that expense as the result of Maravilla's conduct.

Therefore, Maravilla's trial counsel was not ineffective for failing to object to the restitution order on the grounds that this $1,000 payment was not authorized by section 1202.4. Because the trial court had the authority to order restitution for the installation of the residential security system, Maravilla cannot establish that he was prejudiced by counsel's failure to raise that objection below.

### III. DISPOSITION

The restitution order is affirmed.

_____
WILSON, J.

WE CONCUR:

_____
GROVER, ACTING P. J.

**_____**
LIE, J.

*People v. Maravilla*
H052592