Filed 11/19/24  P. v. Hernandez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F085668 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. BF160644A) |
| JULIAN CARLOS HERNANDEZ, | **OPINION** |
| Defendant and Appellant. | |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  John W. Lua, Judge.

Richard M. Oberto, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Christopher J. Rench and Eric L. Christoffersen, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

In 2015, Bakersfield Police Officer David Nelson attempted to conduct a traffic stop on a silver Hyundai. The vehicle's driver did not stop and evaded Nelson during a lengthy high-speed pursuit. As the pursuit continued, Nelson performed a turn to follow the vehicle, and his patrol car went into a skid and crashed into a wall. Nelson died of blunt injuries to his chest. The driver of the Hyundai was not immediately apprehended. Several hours after the pursuit, officers received a tip that led them to appellant and defendant Julian Carlos Hernandez (defendant), who admitted he was driving the silver Hyundai and knew he was being pursued by a police officer.

Defendant was charged with second degree murder and recklessly evading an officer causing death. He did not testify at his jury trial, but defense counsel cross-examined the witnesses and established that no one saw the person or persons who were inside the vehicle during the actual pursuit. The jury was instructed on aiding and abetting, the natural and probable consequences doctrine, and target and nontarget offenses; it was not instructed on direct aiding and abetting or felony murder. The prosecution relied on defendant's admissions, argued he was driving the Hyundai, and he was guilty of second degree murder based on implied malice. Defense counsel argued defendant may have made his prior admissions to protect someone else, and the evidence raised a reasonable doubt that he was the driver. Counsel also cited the natural and probable consequences instruction, and argued there was a reasonable doubt whether defendant was in the car or shared the driver's intent.

In 2018, defendant was convicted as charged of count 1, second degree murder of Officer Nelson, with the special allegations that the victim was a peace officer killed in the performance of his duties and a principal was armed with a firearm; and count 2, recklessly evading a peace officer causing death, with the same arming enhancement. He was also convicted of count 3, possession of a firearm by a felon; count 4, possession of

ammunition by a felon; and count 5, unlawfully carrying a loaded firearm in a vehicle. He was sentenced to 25 years to life plus a determinate term.

In 2022, the trial court denied defendant's Penal Code[1] section 1172.6 petition for resentencing for failing to state a prima facie case. On appeal from that order, defendant asserts remand for an evidentiary hearing is required because the jury was instructed on aiding and abetting and the natural and probable consequences doctrine, it could have relied on this now-invalid theory of imputed malice to convict him of murder, and the court improperly made factual findings to deny the petition. We agree and remand the matter for an evidentiary hearing.

## FACTS[2]

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

[2] This court granted defendant's request to take judicial notice of the entirety of the record from his jury trial, and this court's nonpublished opinion in defendant's direct appeal, *People v. Hernandez* (Feb. 18, 2021, F077476) (*Hernandez*), that modified defendant's sentence and affirmed the judgment as modified, from which we have summarized and/or quoted the following factual and procedural backgrounds.

As will be further explained below, we also ordered the parties to file supplemental briefing on whether we could take judicial notice of the entirety of our own records in defendant's direct appeal, including the statements in the briefing. The People did not object. Defendant objected because such arguments did not constitute part of the record of conviction for purposes of the prima facie finding. We reject defendant's objections and take judicial notice of these records because appellate courts routinely take judicial notice of the records of their own cases under Evidence Code sections 452, subdivision (d) and 459. (See, e.g., *Rel v. Pacific Bell Mobile Services* (2019) 33 Cal.App.5th 882, 886; *People v. Bilbrey* (2018) 25 Cal.App.5th 764, 769, fn. 7; *People v. Vizcarra* (2015) 236 Cal.App.4th 422, 426, fn. 1.)

In doing so, however, we note that in reviewing a section 1172.6 petition, the court may rely on "the procedural history of the case recited in any prior appellate opinion." (§ 1172.6, subd. (d)(3); see *People v. Cooper* (2022) 77 Cal.App.5th 393, 400, fn. 9; *People v. Clements* (2022) 75 Cal.App.5th 276, 292.) The role of the appellate opinion is limited, however, and the court may not rely on factual summaries contained in prior appellate decisions or engage in fact finding at the prima facie stage. (*People v. Lewis* (2021) 11 Cal.5th 952, 972 (*Lewis*); *People v. Clements*, at pp. 292–293.) To the extent we have quoted the facts from defendant's trial or statements in the briefing from his

3.

"At 2:37 a.m. on June 26, 2015, Officer Nelson broadcast over the radio that he was in pursuit of a subject in an unlicensed Hyundai who failed to yield, and the subject was going northbound on Haley Street at 60 miles per hour. Nelson reported the suspect had committed Vehicle Code violations and the vehicle had accelerated to 75 miles per hour."

The investigating officers later recovered security videos from several businesses that showed the pursuit through the city streets. At defendant's trial, accident reconstruction experts testified about their review of these videos, the route of the pursuit, and the estimated speeds reached by both Nelson and the driver of the Hyundai. One officer managed to catch up to Nelson, but only saw the emergency lights of Nelson's patrol car and did not see the Hyundai or the fatal crash.

The experts testified that during the pursuit, the Hyundai reached speeds of 90 to 100 miles per hour as it failed to stop and made multiple turns on city streets. As Nelson continued to follow the Hyundai, he made a right turn but the tires on his patrol car "started to lose friction and went into a skid," and his patrol car "went into a counterclockwise rotation. Based on the skid marks, [an expert] determined Nelson tried to steer out of it. Nelson's car hit a curb, and then hit a second curb that sent the patrol car into a clockwise spin. Nelson's patrol car crashed into a pole and a brick wall."

When officers and paramedics arrived at the scene, they found Nelson "in the driver's seat, and he did not have a pulse. Nelson's patrol car caught fire, and the paramedics removed him from the burning vehicle."

"Officer Nelson was taken to the hospital where he died of blunt injuries to his chest. The pathologist testified a deceleration injury refers to situations where there is a head-on vehicular collision into a wall or pole and, upon sudden impact, the heart moves

direct appeal, we have done so to place his current arguments in context, and not to make any factual findings or resolve factual disputes for purposes of the prima facie determination.

4.

forward and the aorta tears. Nelson suffered a deceleration injury resulting from the crash that completely tore the upper part of his aorta, and he died within a few minutes of the impact."

## Recovery of the shotgun

The driver of the silver Hyundai was not apprehended during the pursuit. The officers investigated the route of Nelson's pursuit of the Hyundai, and "recovered a 12-gauge pump shotgun, parts from its broken wooden stock, four live, red shotgun shells, and a grey T-shirt. The gun and other items were scattered along a driveway on Panorama Drive near Mount Vernon Avenue. There was a spent black shotgun shell in the weapon." "Based on the shotgun's location and the [Hyundai's] route, it appeared the shotgun had been tossed from the Hyundai's passenger window during the pursuit."

## Arrest of defendant

"At 11:00 a.m. on June 27, 2015, Officer [L.] Rodriguez and his partner went to an apartment on an anonymous tip. The apartment's door was open. Rodriguez knocked for 20 minutes and no one answered. A silver Hyundai was parked in the apartment's garage.

"After about 25 minutes, Veronica [N.] came to the apartment's door and told Officer Rodriguez that she was home with only her children and a girlfriend. Rodriguez asked if any men were in the apartment. [Veronica N.] said her boyfriend 'Jose' might be there. Rodriguez entered the apartment and encountered Jose [G.] and defendant . . . ."

## Defendant's letter

When Rodriguez contacted defendant in the apartment, defendant gave him a handwritten letter. "Defendant signed the letter in Rodriguez's presence and said he had been writing the letter ' "when the officers arrived." ' " The letter stated:

> " 'I Julian Hernandez, am the one who fled from the officer who was trained and prepaird for encounters as such in witch he unfourtunetly lost his life because he lost control of the situation! And lost controle of his training and witch I am your basic average citizin who because of my past, chose to run away from being shot, tazed runover or beaten by battons, like

5.

by only BPD and my wife cheeted on me with a BPD officer whom I have been threatened by and if there going to beat/hurt me why not take the slim odds of getting away and not getting hurt! Why did he fallow me in the 1st place profileing me because I got tatoos and it was late that was without cause stop witch triggerd flashbacks when he put his hand on his gun I got angziety and ran away.' (Spelling and grammatical errors in the original.)"

**Defendant's postarrest statement**

"Officer Rodriguez took defendant into custody and drove him to the police department. During the drive, defendant initiated a conversation with Rodriguez and asked if it was possible for one of the officer's 'buddies to get out of uniform and go at it' with him."

**Defendant's postarrest interview**

"At 8:45 p.m. on June 27, 2015, Sergeant [J.] Moore met with defendant at the police department and advised him of the warnings pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436. Defendant understood the advisements and agreed to answer questions. He did not appear under the influence of drugs. The interview was recorded.

"Defendant admitted he was driving the silver Hyundai that was pursued by Officer Nelson. Defendant said he had been staying with [Veronica N.] and borrowed her car because he wanted to drive around and think about his next move with his wife and kids.

"Defendant said the Hyundai had valid license plates, but he covered them with paper plates before he drove away from the apartment.

"Defendant said that when he was driving around, he was very angry with his wife because they had ongoing problems, and she would not let him see his kids. He thought his wife was having an affair with a Bakersfield police officer and felt his whole world was coming down on him.

"Defendant said he saw Officer Nelson at the beginning of the pursuit when he looked in his rearview mirror. He described Nelson as having a bald head and a ' "walking attitude." ' Defendant knew he was being pursued by a Bakersfield police

6.

officer because he saw his uniform, heard the siren, and saw the flashing lights. Defendant claimed he saw Nelson's right hand reach down to his sidearm. Defendant also saw the patrol car's spotlight.[3]

"Defendant said that at one point during the pursuit, he thought about driving off the bluffs because that would solve all his problems. Defendant described the route of the pursuit, said he had taken it many times, and he used a route that would eventually lead to his wife's residence.

"When defendant described his route, he failed to mention his turn onto the street where the officers found the shotgun on the side of the road. When Sergeant Moore later asked him about the shotgun, defendant did not initially admit he had the gun but then said it was in the car. Defendant said it was a 12-gauge shotgun that he modified by taping a flashlight to the barrel. It was wrapped in something grey, and it was loaded with black and red rounds. Defendant said he threw it out of his car's passenger window. Defendant identified the shotgun retrieved by the police as the weapon.[4]

"Sergeant Moore asked defendant how fast he was going at particular times of the pursuit. Defendant said 'he just mashed the accelerator all the way down to the floor.' He was surprised the car 'would go so fast,' and that was how he was able to get away from the officer. Defendant said he was 'way ahead' of Officer Nelson. Defendant compared it to how fast he went when the police pursued him during an incident that occurred when he was younger. [Fn. omitted.]

---

**3** Defendant's statement about the spotlight corresponded to one of the videos from the early part of the pursuit, "that showed Officer Nelson shining his patrol car's spotlight on defendant's car as he pulled out of the parking lot at the beginning of the pursuit."

**4** "A grey shirt was found on the street near the shotgun; there was a black expended shell in the weapon, and red live shells on the street."

"Sergeant Moore asked defendant if he remembered running stop signs. Defendant knew he ran a stop sign, but he was not sure if he ran through stoplights because 'he just wasn't paying attention.'

"Sergeant Moore asked defendant why he did not just stop the car. Defendant said 'he wouldn't stop for Bakersfield Police. He actually said if it was a sheriff he may have stopped, but not for the Bakersfield Police Department.' Defendant said he wanted to go 'toe to toe' and 'get in the ring' with a Bakersfield police officer and would have been in a shootout with the police if he still had the shotgun at the end of the pursuit.

"Sergeant Moore testified that defendant appeared remorseful but 'at other points he seemed agitated and angry.' Moore asked defendant whether someone could have been hurt by the way he was driving. Defendant said 'he really wasn't thinking about it,' and 'he did not care if he got hurt.' Defendant said he was hearing voices that told him to turn left and right, and he did not know why the voices were telling him that. Defendant also said that his mind would go blank on occasion. Defendant said after the pursuit ended, he drove back to [Veronica N.'s] apartment."

**Forensic evidence**

"Defendant's identification was in the Hyundai, and his fingerprints were on the exterior of the front passenger door's window. A 12-gauge shotgun shell was in the car's trunk."

The shotgun, broken stock, live shells, and the spent shell that were found on the street were examined. Defendant was determined to be a 90 percent contributor to DNA on the spent shell found inside the shotgun. The DNA analysis was inconclusive as to the shotgun and the piece of the stock. Defendant was excluded as a DNA contributor for the swab taken from both the firearm stock and the shell recovered and submitted. It was not possible to determine when the DNA evidence was deposited on the items.

**Additional trial evidence**

The prosecution introduced evidence of defendant's prior driving history and speeding violations, and prior acts of fleeing from the police.

Defendant did not testify and the defense did not introduce any evidence. However, defense counsel cross-examined the prosecution's expert witnesses that no one saw how many people were in the car during the pursuit, Nelson's driving performance, and whether the manner he performed his final right turn led to his vehicle's tires losing friction and going into a spin, as relevant to causation for murder.

The court denied defendant's motion to introduce evidence that Nelson was not wearing his seatbelt at the time of the fatal collision and rejected his argument that such evidence was relevant to causation, implied malice, and/or contributory negligence.

## PROCEDURAL HISTORY

On July 23, 2015, an information was filed in the Superior Court of Kern County charging defendant with count 1, second degree murder (§ 187, subd. (a)), with the special allegation that the victim was a peace officer killed in the performance of his duties (§ 190, subd. (b)); count 2, recklessly evading a peace officer causing death (Veh. Code, § 2800.3)[5]; count 3, possession of a firearm by a felon (§ 29800, subd. (a)(1)); count 4, possession of ammunition by a felon (§ 30305, subd. (a)(1)); and count 5, unlawfully carrying a loaded firearm in a vehicle (§ 25850, subd. (c)(1)).

As to counts 1 and 2, it was alleged that a principal was armed with a firearm during the commission of the offenses, a 12-gauge shotgun (§ 12022, subd. (a)(1)); and as to all counts, that defendant had one prior prison term enhancement (§ 667.5, [former] subd. (b)).

---

[5] Vehicle Code section 2800.3, subdivision (b) states that "[w]henever willful flight or attempt to elude a pursuing peace officer in violation of [Vehicle Code] Section 2800.1 proximately causes death to a person," the defendant shall be punished by a term of four, six or 10 years in prison.

On March 21, 2018, defendant's jury trial began.

## JURY INSTRUCTIONS

### Aiding and abetting instructions

The court gave CALCRIM No. 400, that a person may be guilty of a crime in two ways: (1) the person directly committed the crime, known as the perpetrator; or (2) the person may have aided and abetted the perpetrator who directly committed the crime.

The court next gave CALCRIM No. 403 on natural and probable consequences:

> "To prove that the defendant is guilty of second-degree murder [count 1] and/or evading a peace officer causing death or serious bodily injury [count 2], the People must prove that:

> "One, the defendant is guilty of evading a peace officer;

> "Two, during the commission of evading a peace officer, *a co-participant in that evading a peace officer committed the crime of second-degree murder and/or evading a peace officer causing death or serious bodily injury*;

> "And, three, under all of the circumstances a reasonable person in the defendant's position would have known that the commission of the second-degree murder and/or evading a peace officer causing death or serious bodily injury was a natural and probable consequence of the commission of the evading a peace officer.

> "A co-participant in a crime is the perpetrator or anyone who aided and abetted the perpetrator. It does not include a victim or innocent bystander.

> "A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes. In deciding whether a consequence is natural and probable, consider all of the circumstances established by the evidence.

> "To decide whether the crime of second-degree murder and/or evading a peace officer causing death or serious bodily injury was committed, please refer to the separate instructions that I will give you on those crimes." (Italics added.)

10.

The next instruction was CALCRIM No. 2181A, entitled, "Evading Peace Officer: Reckless Driving (Veh. Code, §§ 2800.1(a), 2800.2)," and it defined the target offense identified in CALCRIM No. 403. It stated:

> "*For purposes of aiding and abetting*, evading a peace officer with wanton disregard for safety is a violation of Vehicle Code sections 2800.1(a) and 2800.2.

> "To prove that the defendant is guilty of this crime, the People must prove that:

> "One, a peace officer driving a motor vehicle was pursuing the defendant;

> "Two, *the defendant, who was also driving a motor vehicle*, willfully fled from or tried to elude the officer intending to evade the officer;

> "Three, during the pursuit the defendant drove with willful or wanton disregard for the safety of persons or property. . . ." (Italics added.)

CALCRIM No. 2181A also defined the additional elements that the peace officer was wearing a uniform, the officer's vehicle was distinctively marked with red lamp and siren, and defendant saw or reasonably should have seen the red lamp.

The jury was not instructed on direct aiding and abetting or the felony-murder rule.

## Instructions on murder and malice

As to count 1, the court gave CALCRIM No. 520 on the elements of second degree murder, that the People had to prove defendant committed "an act that caused the death of another person" and acted with malice aforethought, and defined express and implied malice.

Also as to count 1, CALCRIM No. 524 stated that if the jury convicted defendant of second degree murder, it had to decide whether the People proved the elements of the peace officer allegation under section 190, subdivision (b): (1) David Nelson was a peace officer lawfully performing his duties as a peace officer; and (2) when defendant killed

11.

Nelson, he knew or reasonably should have known that he was a peace officer performing his duties.

**Causation**

The court gave a modified version of CALCRIM No. 620A on causation for murder that stated in relevant part:

> "For the purposes of determining causation, a direct, natural, and probable consequence is a consequence which is normal and is a reasonably foreseeable result of the original act. The consequence need not have been a strong probability. A possible consequence which might reasonably have been contemplated is enough. The precise consequence need not have been foreseen. It is enough if the possibility of some harm of the kind which resulted from the act was foreseeable.

> "There may be more than one cause of the death of David Nelson. When the conduct of two or more persons contributes concurrently as a cause of the death, the conduct of each is a cause of the death if that conduct is also a substantial factor contributing to the result. A cause is concurrent if it is operative at the moment of the death and acted with another cause to produce the death.

> "If you find that a defendant's conduct was a cause of death to another person, then it is no defense that the conduct of some other person, even the deceased person, contributed to the death.

> "An intervening act may be so disconnected and unforeseeable as to be a superseding cause that, in such a case, the defendant's act will be regarded at law as not being a cause of the injuries sustained.

> "It is not a defense to a criminal charge that the deceased or some other person was guilty of negligence, which was a contributory cause of the death involved in the case."[6]

---

[6] The trial court declined to give CALCRIM No. 520's causation language for murder, because "defendant did not directly collide with or crash into Officer Nelson's car." Instead, the court gave the above instruction based on "a series of homicide cases that addressed causation where the defendant did not directly crash into the decedent." In the direct appeal, we rejected defendant's arguments of instructional error and found the modified instruction correctly stated the applicable causation principles.

12.

**Instructions on count 2**

The court gave CALCRIM No. 2180 to define the elements of count 2, evading a peace officer causing death or serious bodily injury in violation of Vehicle Code section 2800.3:

> "One, a peace officer in a vehicle was pursuing the defendant, who was also driving a vehicle;
>
> "Two, the defendant intended to evade the peace officer;
>
> "Three, while driving, the defendant willfully fled from or tried to elude the pursuing peace officer;
>
> "Four, the defendant's attempt to flee from or elude the pursuing peace officer caused the death of or serious bodily injury to someone else . . . ."

The fifth element defined a distinctively marked police vehicle and uniformed officer.

**Lesser included offense for count 2**

The court also gave CALCRIM No. 2181 on the elements of evading an officer in violation of Vehicle Code section 2800.1, subdivision (a), as a lesser included offense of count 2: a peace officer was pursuing defendant, "the defendant, who was also driving a motor vehicle, willfully fled from or tried to elude the officer, intending to evade the officer," the definitions of a distinctively marked police vehicle with a red lamp and uniformed officer, and "defendant either saw or reasonably should have seen" the red lamp.[7]

---

[7] The instruction on the lesser included offense of evading was different than CALCRIM No. 2181A, that defined the target offense of evading with willful or wanton disregard, for the natural and probable consequences instruction.

13.

## Peace officer finding

The jury was given CALCRIM No. 524 on the peace officer allegation attached to count 1—that if the jury convicted defendant of second degree murder, it had to decide whether the People proved that David Nelson was a peace officer lawfully performing his duties as a peace officer; and when defendant killed Nelson, he knew or reasonably should have known that he was a peace officer performing his duties.

## Firearm enhacement

CALCRIM No. 3115 stated that if the jury found defendant guilty of count 1, murder, and/or count 2, evading an officer, the jury had to decide the attached allegation that "one of the principals was armed with a firearm in the commission of that crime."

> "A person is a principal in a crime if he or she directly commits the crime *or if he or she aids and abets* someone else who commits the crime. [¶] · · · [¶]

> "A principal is armed with a firearm when that person:

> "One, carries a firearm or has a firearm available for use in either offense or defense in connection with the crimes charged in Count 1 and/or 2;

> "And, two, knows that he or she is carrying the firearm or has it available."  (Italics added.)

The jury was separately instructed on the elements of count 3, possession of a firearm by a felon; count 4, felon in possession of ammunition; and count 5, carrying a loaded firearm, all based on defendant's knowing possession of a firearm and ammunition.

## CLOSING ARGUMENTS

## The prosecution

The prosecutor argued defendant was guilty of murder because he admitted he drove the Hyundai that led Nelson on the high-speed chase and resulted in the officer's death.  The prosecutor addressed the elements of murder and malice, argued defendant

was guilty of second degree murder based on implied malice, and extensively addressed the evidence about the high-speed chase that proved his implied malice and causation that caused the fatal crash.

**Defense**

Defense counsel's closing argument focused on reasonable doubt for count 1 and the other charges. "The first question, and kind of the overarching question of this whole case—or at least from my perspective one of the overarching questions—is did the prosecution rule out the fact that *perhaps it's possible that [defendant] was not in the car at all*?" (Italics added.)

Defense counsel argued the evidence raised a reasonable doubt whether defendant was in the car because there were no eyewitnesses who identified the driver during the chase or saw how many people were in the car, it was not possible to determine when fingerprints had been left on the gun, the gun was thrown from the passenger side of the car, and there was DNA on the gun from more than one person. "The prosecutor hasn't ruled out the possibility that other people had access to the vehicle. The fact is we really know very little about where the vehicle was, where it came from, who it belonged to, what happened to it. . . . We don't know if somebody was allowed to borrow it, who might have been allowed to borrow it, when they might have been allowed to borrow it," when the vehicle returned to the apartment, who else was in the apartment, and there was a reasonable doubt "as to who was driving that car." "And because the prosecutor has not ruled out all of the reasonable doubt, possibilities based on reason, not just speculation or a hunch, *you cannot conclude that [defendant] was the driver of the car*." (Italics added.)

Defense counsel acknowledged that the jury "may say well, *what about the admissions*?" (Italics added.) Counsel argued the jury could have a reasonable doubt about defendant's admissions because when he pleaded not guilty, "he is in essence saying those things that I told the police were not true." The prosecution's evidence did

not rule out the possibility that defendant was trying to protect other people who were in the apartment with him when he was arrested, using information he heard from them.

Defense counsel stated that if the jury decided there was more than one person in the car, the prosecution would "fall back on *an aiding and abetting theory* of guilt" (italics added), citing CALCRIM No. 400. Counsel explained that if the jury relied on aiding and abetting, it had to refer to CALCRIM Nos. 403 and 2181A that defined the target and nontarget offenses. Counsel stated the "target offense" was evading an officer, and the "non-target" offenses were count 1, murder, and count 2, evading an officer causing death or serious bodily injury.

"So it basically says if you find that [defendant] was aiding and abetting in an evading offense under . . . Vehicle Code [sections] 2800.1(a) or 2800.2, then you have to determine was it a natural and probable consequence of participating in those crimes that they would have committed the offenses of second-degree murder and evading a peace officer causing death or serious bodily injury . . . ."

Counsel argued there was no evidence that defendant knew the driver's conduct during the pursuit was dangerous to human life.

Defense counsel concluded: "Your job . . . is to look at those facts and make that decision, did [the prosecutor] do his job. If he did his job and excluded all the reasonable possibilities that it was somebody else besides [defendant], then you would find him guilty if he's done his job. If he hasn't, *then you have to find him not guilty*, and that's what you told me you'd do when you were picked for this jury." (Italics added.)

**Rebuttal argument**

In rebuttal, the prosecutor rejected defense counsel's aiding and abetting arguments and asserted there was no evidence that another person was in the car. "We know [defendant] was the driver because he told us that. He told us that orally and he told us in a letter."

16.

The prosecutor again argued defendant was guilty of second degree murder based on implied malice, and his confessions were very specific about the circumstances of the vehicle pursuit. "Defense counsel talked about something to the effect if you decide there was more than one person. [¶] . . . [H]e mentioned aiding and abetting. I don't know. The defendant's not an aider and abettor. He's not. He's the perpetrator as the law describes that. He doesn't aid and abet anything. He does it unequivocally, by his own statements, by the facts in this case. . . ."

## **VERDICT AND SENTENCE**

On April 5, 2018, the jury found defendant guilty as charged of count 1, second degree murder, with the special allegation that the victim was a peace officer killed in the performance of his duties; and count 2, recklessly evading a peace officer causing death. The jury found true the special allegations attached to counts 1 and 2, that a principal was armed with a firearm during the commission of the offenses. Defendant was also convicted of the firearm and ammunition offenses in counts 3 through 5. The court found the prior prison enhancement true.

On May 4, 2018, the court sentenced defendant to an aggregate term of six years plus 25 years to life, based on 25 years to life for count 1, second degree murder, plus one year for the firearm enhancement and one year for the prior prison term enhancement; and a consecutive upper term of three years for count 4, possession of ammunition, plus one year for the prior prison term enhancement. The court stayed the terms for the remaining convictions and enhancements pursuant to section 654.[8]

---

[8] The court imposed the indeterminate sentence for count 1 pursuant to the special allegation found true under section 190, subdivision (b): "Except as provided in subdivision (c), every person guilty of murder in the second degree shall be punished by imprisonment in the state prison for a term of 25 years to life if the victim was a peace officer, as defined in subdivision (a) of Section 830.1, subdivision (a), (b), or (c) of Section 830.2, subdivision (a) of Section 830.33, or Section 830.5, who was killed while engaged in the performance of his or her duties, and the defendant knew, or reasonably

**Direct appeal**

In the briefing in defendant's direct appeal, appellate counsel conceded that defendant "sped away from a police officer who had made a traffic stop on him," and raised allegations of instructional and evidentiary errors.

In 2021, we filed the nonpublished opinion, rejected defendant's arguments, and held there was substantial evidence of implied malice and second degree murder, the jury was correctly instructed on causation and natural and probable consequences, the court correctly excluded evidence of Nelson's alleged negligent conduct, and the court correctly admitted evidence of defendant's prior traffic citations and failure to stop for officers.[9] We agreed the two prior prison term enhancements should be stricken, modified defendant's aggregate sentence to four years plus 25 years to life, and affirmed the judgment as modified.

## PETITION FOR RESENTENCING

On May 9, 2022, defendant filed, in pro. per., a petition for resentencing pursuant to section 1172.6 and requested appointment of counsel. Defendant filed a supporting declaration that he was eligible for resentencing because he was charged and convicted of murder, he was convicted under the felony-murder rule, the natural and probable consequences doctrine, or other theory in which malice was imputed based solely on his participation in a crime, and he could not presently be convicted of murder because of changes made to sections 188 and 189. The court appointed counsel.

---

should have known, that the victim was a peace officer engaged in the performance of his or her duties."

[9] In rejecting defendant's instructional claims, we found the trial court instructed the jury on aiding and abetting and the natural and probable consequences doctrine, and it may have done so "on the theory that another person was in the car during the pursuit. In closing argument, defense counsel referred to this instruction and the 'natural and probable consequences' language contained therein." (*Hernandez*, *supra*, F077476.)

18.

**The People's opposition**

The People filed opposition and requested the trial court take judicial notice of the record from defendant's jury trial and this court's opinion in his direct appeal. The People argued defendant was ineligible for resentencing as a matter of law because he was the driver of the vehicle and the "actual killer," and the jury found true the special allegation that defendant knew or reasonably should have known the victim was a peace officer.

**Defendant's reply brief**

Defense counsel filed a reply brief and argued the petition stated a prima facie case because the court could not make factual findings on the trial evidence, the jury was instructed on the natural and probable consequences doctrine, and an evidentiary hearing should be held.

**The court's hearing on the petition**

On December 13, 2022, the court conducted a hearing on the prima facie issue and invited arguments; the parties submitted the matter. The court stated it had reviewed the record of conviction from defendant's trial. The court denied defendant's petition because "he was the actual killer and the subdivision does not apply when the defendant killed or attempted to kill a peace officer."[10]

Defendant filed a timely notice of appeal.

---

[10] As will be discussed below, the court was apparently referring to the amendments to section 189, stating that the newly enacted limitations to the felony-murder rule do not apply "to a defendant when the victim is a peace officer who was killed while in the course of the peace officer's duties, where the defendant knew or reasonably should have known that the victim was a peace officer engaged in the performance of the peace officer's duties." (§189, subd. (f).) The peace officer exception is limited to felony murder, the jury herein was not instructed on felony murder, and the exception does not apply to convictions based on the natural and probable consequences doctrine.

**DISCUSSION**

On appeal, defendant argues the trial court should have issued an order to show cause and conducted an evidentiary hearing on his petition because the jury was instructed "on theories of liability that included aiding and abetting and the natural and probable consequences doctrine" that permitted the jury to convict him of second degree murder "as an aider and abettor under the now defunct natural and probable consequences doctrine."

Defendant argues the record of conviction does not show he was convicted as the actual perpetrator because the jury was instructed with CALCRIM Nos. 400, 403, and 2181A that defined aiding and abetting, natural and probable consequences, and target and nontarget offenses. These instructions permitted the jury to convict him of counts 1 and 2 as an aider and abettor "under the now defunct natural and probable consequences doctrine, without any finding that [defendant] acted with malice aforethought."

## I.  Section 1172.6

We begin with the relevant statutes and amendments. Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437) became effective in 2019, and "altered the substantive law of murder in two areas. First, with certain exceptions, it narrowed the application of the felony-murder rule by adding section 189, subdivision (e) . . . . Under that provision, 'A participant in the perpetration or attempted perpetration of a [specified felony] in which a death occurs is liable for murder only if one of the following is proven:  [¶]  (1) The person was the actual killer.  [¶]  (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶]  (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of [s]ection 190.2.' [Citation.]"  (*People v. Curiel* (2023) 15 Cal.5th 433, 448 (*Curiel*).)

"Second, Senate Bill [No.] 1437 imposed a new requirement that, except in cases of felony murder, 'a principal in a crime shall act with malice aforethought' to be convicted of murder. [Citation.] 'Malice shall not be imputed to a person based solely on his or her participation in a crime.' [Citation.] One effect of this requirement was to eliminate liability for murder as an aider and abettor under the natural and probable consequences doctrine. [Citation.] '[U]nder the natural and probable consequences doctrine, an accomplice is guilty not only of the offense he or she directly aided or abetted (i.e., the target offense), but also of any other offense committed by the direct perpetrator that was the "natural and probable consequence" of the crime the accomplice aided and abetted (i.e., the nontarget offense). [Citation.] A nontarget offense is the natural and probable consequence of a target offense "if, judged objectively, the [nontarget] offense was reasonably foreseeable." [Citation.] The accomplice need not actually foresee the nontarget offense. "Rather, liability ' "is measured by whether a reasonable person in the defendant's position would have or should have known that the charged offense was a reasonably foreseeable consequence of the act aided and abetted." ' " ' [Citation.] Thus, under prior law, a defendant who aided and abetted an intended assault could be liable for murder, if the murder was the natural and probable consequence of the intended assault. [Citation.] The defendant need not have intended the murder or even subjectively appreciated the natural and probable consequences of the intended crime. [Citation.] Senate Bill [No.] 1437 ended this form of liability for murder. [Citation.]" (*Curiel*, *supra*, 15 Cal.5th at p. 449.)

The amendments to sections 188 and 189, however, did not eliminate a defendant's liability as a direct aider and abettor. "Under a direct aider and abettor liability theory, the prosecution must prove the person who is not the actual killer 'engaged in the requisite acts [actus reus] and had the requisite intent [mens rea]' to aid and abet the target crime of murder." (*People v. Pacheco* (2022) 76 Cal.App.5th 118, 124.) "It is well settled that Senate Bill [No.] 1437 'does not eliminate direct aiding and

21.

abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought.' [Citation.]" (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1252.)

It is also settled that the statutory amendments "maintained the viability of murder convictions based on implied malice, and the definition of implied malice remains unchanged." (*People v. Clements*, supra, 75 Cal.App.5th at p. 298.)

"Senate Bill [No.] 1437 also enacted former section 1170.95, which created a procedural mechanism 'for those convicted of felony murder or murder under the natural and probable consequences doctrine to seek relief' where the two substantive changes described above affect a defendant's conviction. [Citation.] . . . Two years later, the Legislature amended the statute to expand the population of eligible offenders, codify certain aspects of our decision in *Lewis*, and clarify the procedure and burden of proof at the evidentiary hearing stage of proceedings. [Citation.] One year after that, former section 1170.95 was renumbered as section 1172.6 without substantive change. [Citation.]" (*Curiel, supra*, 15 Cal.5th at p. 449.)

Section 1172.6, subdivision (a) states: "A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts . . . ."

" '[T]he process begins with the filing of a petition containing a declaration that all requirements for eligibility are met ([§ 1172.6], subd. (b)(1)(A)), including that "[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to . . . Section 188 or 189 made effective January 1, 2019," the effective date of

22.

Senate Bill [No.] 1437 (§ 1172.6, subd. (a)(3)).' [Citation.]" (*Curiel*, *supra*, 15 Cal.5th at p. 450.)

## A. Prima facie determination

When a petition for resentencing is filed, the trial court shall appoint counsel if requested by petitioner. (§ 1172.6, subd. (b)(3).) After counsel is appointed and the parties have had an opportunity to submit briefing, "the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause." (§ 1172.6, subd. (c).)

"The record of conviction will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, *supra*, 11 Cal.5th at p. 971.) The record of conviction includes the charging documents, jury instructions, closing arguments, and verdicts. (*People v. Flores* (2023) 96 Cal.App.5th 1164, 1170; *People v. Harden* (2022) 81 Cal.App.5th 45, 50, 54–55; *People v. Lopez* (2022) 78 Cal.App.5th 1, 13–14; *People v. Jenkins* (2021) 70 Cal.App.5th 924, 935.)

"While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section [1172.6] relief, the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citation.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citation.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition,"

then "the court is justified in making a credibility determination adverse to the petitioner.' " [Citation.]" (*Lewis*, *supra*, 11 Cal.5th at p. 971.)

"Appellate opinions . . . are generally considered to be part of the record of conviction. [Citation.] However . . . , the probative value of an appellate opinion is case specific, and 'it is certainly correct that an appellate opinion might not supply all answers.' [Citation.] In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.]" . . . [T]he 'prima facie bar was intentionally and correctly set very low.' " (*Lewis*, *supra*, 11 Cal.5th at p. 972.)

The court must accept the petitioner's allegations as true "unless the allegation is refuted by the record. [Citation.] And this allegation is not refuted by the record unless the record conclusively establishes every element of the offense. If only *one* element of the offense is established by the record, the petitioner could still be correct that he or she could not currently be convicted of the relevant offense based on the absence of *other* elements." (*Curiel*, *supra*, 15 Cal.5th at p. 463, original italics.)

" '[T]he trial court should not decide unresolved factual issues[] that involve credibility determinations or weighing of evidence. Rather, it should decide such issues only after issuing an order to show cause and holding an evidentiary hearing.' [Citation.]" (*People v. Harden*, *supra*, 81 Cal.App.5th at p. 51.)

"At the prima facie stage, a court must accept as true a petitioner's allegation that he or she could not currently be convicted of a homicide offense because of changes to section 188 or 189 made effective January 1, 2019, unless the allegation is refuted by the record. [Citation.] And this allegation is not refuted by the record unless the record conclusively establishes every element of the offense. If only *one* element of the offense is established by the record, the petitioner could still be correct that he or she could not currently be convicted of the relevant offense based on the absence of *other* elements." (*Curiel*, *supra*, 15 Cal.5th at p. 463, original italics.)

" 'If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition. [Citations.] If, instead, the defendant has made a prima facie showing of entitlement to relief, "the court shall issue an order to show cause." [Citation.]' [Citation.]" (*Curiel*, *supra*, 15 Cal.5th at p. 450.)

To demonstrate prejudice from statutory errors in the denial of a section 1172.6 petition before the issuance of an order to show cause, the petitioner must show it is reasonably probable that, absent error, his petition would not have been summarily denied without an evidentiary hearing. (*Lewis*, *supra*, 11 Cal.5th at p. 974; *People v. Watson* (1956) 46 Cal.2d 818, 836.) We otherwise independently review the trial court's denial of a section 1172.6 petition for failing to state a prima facie case. (*People v. Bratton* (2023) 95 Cal.App.5th 1100, 1113.)

## B. Evidentiary hearing

If the trial court determines that the petitioner has made a prima facie showing of entitlement to relief, it must issue an order to show cause and hold an evidentiary hearing. (§ 1172.6, subds. (c), (d).) The prosecution bears the burden of proving, "beyond a reasonable doubt," that the petitioner is ineligible for resentencing. (§ 1172.6, subd. (d)(3).)

At the evidentiary hearing, the trial court may make factual findings, credibility determinations, and weigh evidence. (*People v. Harden*, *supra*, 81 Cal.App.5th at p. 51.) "Although the parties may offer new or additional evidence to meet their respective burdens, section 1172.6, subdivision (d)(3) does not contemplate a whole new trial on all the elements of murder. [Citation.] Rather, '[t]he retroactive relief provided by [section 1172.6] is a legislative "act of lenity" intended to give defendants serving otherwise final sentences the benefit of ameliorative changes to applicable criminal laws and does not result in a new trial or increased punishment.' [Citations.] Thus, the focus at the evidentiary hearing phase of [a section] 1172.6 petition is 'on evidence made relevant by the amendments to the substantive definition of murder,' which, in the context of section

25.

188, requires 'the prosecution to prove that all principals to a murder acted with malice aforethought.' [Citations.]" (*People v. Vargas* (2022) 84 Cal.App.5th 943, 952.)

"While the superior court acts as an independent fact finder in determining whether the People have met their burden [at the evidentiary hearing], on appeal, the reviewing court applies the substantial evidence standard to the superior court's findings. [Citation.]" (*People v. Vargas*, *supra*, 84 Cal.App.5th at p. 951.)

## II.  The trial court's prima facie determination

In this case, the trial court denied defendant's section 1172.6 petition for failing to state a prima facie case for two reasons:  (1) defendant was the actual killer, and (2) the statutory amendments did not apply "when the defendant killed or attempted to kill a peace officer."

The trial court's second reason for denying defendant's petition was apparently based on the peace officer exception to the felony-murder rule.  The amendments to section 189 modified the felony-murder rule but also created "a single exception to these requirements" in subdivision (f), "for cases where 'the victim is a peace officer who was killed while in the course of his or her duties, where the defendant knew or reasonably should have known that the victim was a peace officer engaged in the performance of his or her duties.' [Citations.]  In such a case, the felony-murder doctrine applies as it did before the enactment of Senate Bill No. 1437, with no requirement to show that the defendant was a major participant in the felony or acted with reckless indifference to human life. [Citation.]" (*People v. Flint* (2022) 75 Cal.App.5th 607, 610.)  "If section 189, subdivision (f) applies, 'a defendant who participates "in the perpetration or attempted perpetration of a felony listed in [section 189,] subdivision (a) in which a death occurs is liable for murder." ' [Citation.]" (*People v. Sifuentes* (2022) 83 Cal.App.5th 217, 228.)

The court's second reason for denying the petition was legally erroneous.  The peace officer exception in section 189, subdivision (f) only applies to convictions based

on the felony-murder rule, and such instructions were not given to the jury in this case. The exception is not applicable to convictions based on the natural and probable consequences doctrine, and the trial court erroneously denied defendant's petition on this basis.

The trial court's legal error would not be prejudicial under *Lewis* and *Watson* if the record of conviction otherwise establishes that defendant was the actual killer and thus ineligible for resentencing as a matter of law.

We must turn to the jury instructions, closing arguments, and verdicts to determine if the record of conviction "establish[es] conclusively that the defendant is ineligible for relief" as the actual killer, and the trial court correctly denied his petition without issuing an order to show cause. (*Curiel*, *supra*, 15 Cal.5th at p. 450.)

## III.  The record of conviction

We begin with the instructions on the charged offenses of count 1, second degree murder; and count 2, evading a peace officer causing death or serious bodily injury in violation of Vehicle Code section 2800.3.

## A.  The instructions

As set forth above, the jury was instructed on murder with malice aforethought, and given the definitions for express and implied malice, and causation for the murder charge. As to count 2, evading a peace officer causing death or serious bodily injury in violation of Vehicle Code section 2800.3, the jury was instructed the elements were that a peace officer was pursuing the defendant, "who was also driving a vehicle," defendant intended to evade the officer, "while driving, the defendant willfully fled from or tried to elude the pursuing peace officer," and defendant's attempt to flee or elude caused the death of another person.

These instructions, taken in isolation, would lead to the conclusion that the jury convicted defendant in counts 1 and 2 because it found defendant was the actual

27.

perpetrator who was driving the car that Nelson attempted to pull over, and led him on the high-speed pursuit that resulted in his death.

However, the court also gave CALCRIM No. 400, that defendant could be convicted of the charged offenses as the actual perpetrator, or an aider and abettor. More critically, the court gave CALCRIM No. 403, that specifically stated the jury could rely on the natural and probable consequences doctrine to convict defendant of count 1, second degree murder, and/or count 2, evasion causing death.

CALCRIM No. 403 stated the first element was that defendant was "guilty" of evading an officer—not that he was the actual perpetrator who was driving the car that was evading the officer. The instruction identified the target offense as evading an officer with wanton disregard for safety, in violation of Vehicle Code sections 2800.1 and 2800.2; and the nontarget offenses were the charges in counts 1 and 2—murder and evading causing death.

CALCRIM No. 403 further stated that in order to rely on the natural and probable cause doctrine, the jury had to find that during the commission of the target offense of evading an officer with wanton disregard, "*a co-participant in that evading a peace officer committed the crime of second-degree murder and/or evading a peace officer causing death or serious bodily injury*," and "*a reasonable person in the defendant's position* would have known that the commission of the second-degree murder and/or evading a peace officer causing death or serious bodily injury was a natural and probable consequence of the commission of the evading a peace officer." (Italics added.)

CALCRIM No. 403 thus expressly permitted the jury to convict defendant of the "nontarget offenses" of count 1, murder, and/or count 2, evasion causing death, as the natural and probable consequences of the "target offense" of evading with wanton disregard—not as the actual perpetrator but based on a coparticipant who was driving the car, and imputing malice to defendant as an aider and abettor.

28.

The jury's finding on the peace officer allegation attached to count 1 fails to clarify whether the jury convicted defendant as the actual perpetrator. CALCRIM No. 524 stated that if the jury convicted defendant of second degree murder, it had to decide whether the People proved that Nelson was a peace officer lawfully performing his duties, and when defendant killed Nelson, he knew or reasonably should have known that Nelson was a peace officer performing his duties. While this instruction refers to defendant's knowledge when he "killed" Nelson, the jury was instructed it could only reach this special allegation if it had already convicted him of count 1, second degree murder. However, CALCRIM No. 403 expressly permitted the jury to convict defendant of murder as an aider and abettor based on the natural and probable consequences doctrine and an imputed malice theory.

The instruction for the firearm enhancements attached to counts 1 and 2 also fails to clarify whether defendant was convicted as the actual perpetrator. CALCRIM No. 3115 stated that if the jury found defendant guilty of count 1, murder, and/or count 2, evading causing death, the jury had to decide the attached allegation that "*one of the principals* was armed with a firearm in the commission of that crime," and a person was a principal if he "directly commits the crime or . . . aids and abets someone else who commits the crime." (Italics added.) The jury found the enhancement true—that "a principal" was armed with a firearm during the commission of the offenses, which again would have permitted the jury to find defendant guilty of counts 1 and 2 as an aider and abettor under the natural and probable consequences doctrine.

Finally, the instructions and verdicts for counts 3, 4, and 5, for felon in possession of a firearm and ammunition, do not refute the possibility that defendant was convicted of counts 1 and 2 as an aider and abettor. The jury could have found that defendant was not the driver but instead the passenger who possessed and threw the shotgun out of the passenger window during the high-speed pursuit, or possessed the ammunition found in the Hyundai when he was later arrested at the apartment.

## B. Closing arguments

To the extent the parties' closing arguments may be considered as part of the record of conviction, the record still fails to establish whether the jury convicted defendant of murder as the actual perpetrator, or an aider and abettor under the natural and probable consequences doctrine based on imputed malice.[11]

In his closing argument, the prosecutor argued defendant was guilty of second degree murder based on implied malice, that defendant was the driver of the Hyundai and thus the actual perpetrator based on his pretrial admissions, and focused on defining implied malice and causation to refute the defense's expected challenges.

Defense counsel acknowledged defendant's pretrial admissions, but argued there was a reasonable doubt whether defendant was the driver or even in the car, because no one saw the driver or the occupants of the Hyundai during the chase, the firearm was thrown out of the passenger window, and there was DNA on the firearm from multiple people.

Defense counsel further argued that aiding and abetting could be an alternate theory of guilt for count 1, and specifically addressed CALCRIM No. 403 on the natural and probable consequences doctrine, and identified the target and nontarget offenses. Defense counsel argued that even if defendant was a passenger in the car, there was a reasonable doubt whether he shared the driver's intent in evading the officer. In rebuttal, the prosecutor rejected aiding and abetting and again stated the evidence showed defendant was the driver based on his pretrial admissions.

---

[11] While the record of conviction for purposes of section 1172.6 has been interpreted to include the parties' closing arguments, "[i]t is elementary . . . that the prosecutor's argument is not evidence and the theories suggested are not the exclusive theories that may be considered by the jury." (*People v. Perez* (1992) 2 Cal.4th 1117, 1126.)

## C. Analysis

The entirety of the record of conviction in this case does not conclusively establish that defendant was convicted as the actual perpetrator. Instead, the instructions permitted the jury to convict him of murder as an aider and abettor based on the now-invalid theory of imputed malice. The jury was fully instructed on the natural and probable consequences doctrine, that counts 1 and 2 were the nontarget offenses, and defined the target offense as evading with willful or wanton disregard for the safety of persons. The definition of the target offense did not require the jury to find he acted with express or implied malice or with the intent to kill. (See, e.g., *People v. Howard* (2005) 34 Cal.4th 1129, 1136–1139; *People v. Weddington* (2016) 246 Cal.App.4th 468, 486–488.)[12] The jury's findings on the peace officer and firearm special allegations were based on whether it had found defendant guilty of murder, but these findings did not clarify that he was convicted as the actual perpetrator or an aider and abettor.

The People acknowledge that "in most cases where a jury has been instructed on the natural and probable consequences as a theory of murder, denial at the prima facie [phase] would be improper." The People assert, however, that the "unique circumstances" of this case still show defendant was convicted as the actual perpetrator and ineligible for resentencing because "neither the prosecutor nor defense counsel argued to the jury that [defendant] was guilty as an aider and abettor under the natural and probable consequences doctrine."

The People further assert that even if the parties addressed the natural and probable consequence instructions in their closing arguments, these arguments would

---

[12] " ' " 'Wantonness includes the elements of consciousness of one's conduct, intent to do or omit the act in question, realization of the probable injury to another, and reckless disregard of consequences.' [Citation.] . . . The word 'willful' in this connection means 'intentional' [citations]. The intention here referred to relates to the disregard of safety, etc., not merely to the act done in disregard thereof." ' [Citation.]" (*People v. Weddington*, *supra*, 246 Cal.App.4th at p. 486.)

have been improper because the trial record "did not contain substantial evidence that [defendant] aided and abetted someone else in evading the police," there was "no affirmative evidence" that anyone other than defendant was driving the car, the natural and probable consequence instructions were not supported by substantial evidence, and this court should presume the jury "rested its verdict on the factually supported theory." The People concede "there was a possibility that someone other than [defendant] was the driver," but assert "[s]uch a possibility is not sufficient" and nothing more than speculation.

As set forth above, however, the instructions on aiding and abetting, the natural and probable consequences doctrine, and the target and nontarget offenses were supported by the trial evidence that none of the responding officers saw who or how many people were in the Hyundai during the pursuit, the shotgun was thrown out of the passenger window of the Hyundai, and defendant's DNA was on the shotgun along with the DNA of unidentified parties. In addition, the parties' closing arguments do not undermine this possibility since defense counsel cited this evidence to argue there was a reasonable doubt whether defendant was the driver or even in the car, expressly referred the jury to CALCRIM No. 403 and the defined target and nontarget offenses, and argued the People failed to prove defendant had the requisite intent as an aider and abettor.

We note that in defendant's direct appeal of his convictions to this court, appellate counsel's opening brief stated that defendant "sped away from a police officer who had made a traffic stop on him," and the court's evidentiary and instructional errors were prejudicial and required reversal. In addressing his evidentiary and instructional contentions, this court stated that it was undisputed by the parties that defendant was driving the Hyundai that led Nelson on the high-speed chase. (*People v. Hernandez*, *supra*, F077476.)

Defendant asserts that appellate counsel's briefing in his direct appeal is not part of the record of conviction for purposes of making the prima facie finding, and counsel's

statement in that appeal represented a tactical decision, it was inconsistent with defense counsel's theory at trial, and it did not "factor into any jury verdict."[13]  In contrast, the People assert that appellate counsel's statement in the direct appeal's briefing "provides additional confirmation that [defendant] was convicted as the actual driver and actual killer of Officer Nelson," "reflects the only reasonable interpretation of the evidence in the record," the trial record "did not contain substantial evidence that anyone but [defendant] was the driver of the car that Officer Nelson followed," and "[t]here is simply insufficient evidence in the record to support [defendant's] guilt as an aider and abettor."

The People's arguments about the impact of the counsel's statement in the briefing in the direct appeal, on the prima facie finding under section 1172.6, are solely based on making factual and credibility findings from the trial record and further support the conclusion that an evidentiary hearing must be held.  Appellate counsel's statements were made in the context of defendant's direct appeal from the judgment of conviction, raising substantial evidence and instructional claims, and are not dispositive in making the prima facie determination under section 1172.6.  As previously explained, in reviewing a section 1172.6 petition, the court may rely on "the procedural history of the case recited in any prior appellate opinion."  (§ 1172.6, subd. (d)(3); see *People v. Cooper*, *supra*, 77 Cal.App.5th at p. 400, fn. 9; *People v. Clements*, *supra*, 75 Cal.App.5th at p. 292.)  The role of the appellate opinion is limited, however, and the court may not rely on factual summaries contained in prior appellate decisions or engage in fact finding at the prima

---

[13] As explained above, this court ordered the parties to file supplemental briefing on whether we could take judicial notice of our own records in defendant's direct appeal, including the briefing.  We have overruled defendant's objections and take judicial notice of our own records.

In that same briefing order, we also directed the parties to address the impact to the instant appeal, if any, of the statement in appellate counsel's opening brief in the direct appeal, that defendant "sped away from a police officer who had made a traffic stop on him."  We herein address the parties' arguments.

facie stage. (*Lewis*, *supra*, 11 Cal.5th at p. 972; *People v. Clements*, at pp. 292–293.) The statements of counsel in argument "are not deemed judicial admissions unless they have the formality of an admission or a stipulation. [Citations.]" (*People v. Kiney* (2007) 151 Cal.App.4th 807, 815.) Moreover, " ' "[i]t is axiomatic that language in a judicial opinion is to be understood in accordance with the facts and issues before the court. An opinion is not authority for propositions not considered." ' [Citations.] 'An appellate decision is not authority for everything said in the court's opinion but only "for the points actually involved and actually decided." ' [Citation.]" (*People v. Knoller* (2007) 41 Cal.4th 139, 154–155.)

## IV. Remand for an evidentiary hearing

In this appeal, defendant argues that when the trial court found he was the actual killer to deny his petition, the court made an impermissible factual finding for the prima facie determination.

As previously explained, the trial court erroneously relied on the peace officer exception to the felony-murder rule to deny defendant's petition. The court's remaining reason to deny the petition was finding that defendant was the actual killer. The record of conviction, consisting of the charges, instructions, closing arguments, and verdicts, do not conclusively establish that defendant was the actual perpetrator and ineligible for resentencing as a matter of law. As a result, the trial court impermissibly made factual findings by relying on the trial evidence and defendant's admissions that he was driving the Hyundai to find he failed to state a prima facie case, which requires remand for an evidentiary hearing.

We find support for this conclusion in *Curiel*, where the defendant was convicted in 2006 after a jury trial of first degree murder with the gang-murder special circumstance and the gang enhancement. The defendant filed a section 1172.6 petition for resentencing and alleged he was convicted under the now-invalid natural and probable consequences doctrine. The trial court denied the petition based on the jury instructions, and held the

34.

jury was required to find he had the intent to kill for the gang-murder special circumstance, and that finding refuted his allegation that he could not be convicted of murder under current law. (*Curiel*, *supra*, 15 Cal.5th at pp. 440–441, 447.)

*Curiel* held the trial court's ruling was erroneous because while the instructions required the jury to find defendant acted with the intent to kill, "[t]he jury's finding of intent to kill does not, itself, conclusively establish that [defendant] is ineligible for relief" (*Curiel*, *supra*, 15 Cal.5th at p. 441), and the allegations in his petition for resentencing, that he could not currently be convicted of murder because of the changes in substantive law enacted by Senate Bill No. 1437, "put at issue all the elements of murder under current law. Murder liability as an aider and abettor requires both a sufficient mens rea and a sufficient actus reus. A finding of intent to kill, viewed in isolation, establishes neither" (*Curiel*, at p. 441).

*Curiel* further found the instructions showed the jury "could have relied on the natural and probable consequences doctrine to convict [the defendant] of murder, and the findings required under that theory—even when combined with the finding of intent to kill required by the gang-murder special circumstance—do not encompass all of the elements of any theory of murder under current law." (*Curiel*, *supra*, 15 Cal.5th at p. 471.) "Because the jury was instructed on the natural and probable consequences doctrine, the jury was required to find only that [the defendant] knew that [the direct perpetrator] intended to commit one of the underlying target offenses and that [the defendant] intended to aid him in *that* offense, not murder. Nor was the jury required to find that the underlying target offenses, themselves, were dangerous to human life." (*Id.* at p. 468, original italics.)

*Curiel* emphasized that when a petitioner alleges that he could not currently be convicted of a homicide offense because of the amendments to sections 188 and 189, his bare allegations put "at issue all elements of the offense under a valid theory," and the petition's allegations are not refuted by the record "unless the record conclusively

establishes every element of the offense" under a valid theory of homicide, intent, and malice. (*Curiel*, *supra*, 15 Cal.5th at pp. 462–463.)

In this case, as in *Curiel*, the instructions permitted the jury to convict defendant as an indirect aider and abettor under the now-invalid natural and probable consequences doctrine. The trial court made the prima facie determination to deny defendant's petition based on the factual finding that defendant was the actual killer, in reliance on the trial evidence of defendant's pretrial admissions.

In making the prima facie determination, however, the court may not engage in " 'factfinding involving the weighing of evidence or the exercise of discretion' " at the prima facie stage. (*Lewis*, *supra*, 11 Cal.5th at p. 972.) "[A] petitioner who has made the factual allegations required by section 1172.6 is entitled to an order to show cause unless readily ascertainable facts from the record conclusively establish the petitioner was convicted under a valid theory." (*People v. Williams* (2024) 103 Cal.App.5th 375, 404, review granted Sept. 11, 2024, S286314, citing *Curiel*, *supra*, 15 Cal.5th at pp. 463, 467; *Lewis*, *supra*, 11 Cal.5th at p. 971; cf. *People v. Delgadillo* (2022) 14 Cal.5th 216, 233 [jury instructed on felony murder but defense counsel conceded at trial that the defendant was the actual perpetrator]; *People v. Bodely* (2023) 95 Cal.App.5th 1193, 1201 [record of conviction established the defendant was actual killer because jury instructions contained no reference to an accomplice, and defense counsel did not argue another person was responsible for the victim's death]; *People v. Harden*, *supra*, 81 Cal.App.5th at p. 56 ["Without weighing conflicting evidence or making credibility determinations, the record of conviction irrefutably establishes as a matter of law that the jury determined [the defendant] was the actual killer. The instructions and verdicts show the only path to convicting [the defendant] of first degree felony murder with special circumstances and a personal-infliction-of-great-bodily-injury enhancement was based on a finding [the defendant] actually killed [the victim]."])

As this court recently explained, "[c]ompelling evidence may be sufficient to persuade a trier of fact. At the same time, even uncontroverted, uncontradicted evidence may be disbelieved. Regardless, absent a factual finding or admission regarding the manner in which the offense was committed, even compelling, uncontroverted, and uncontradicted testimony is not *conclusive* of a petitioner's guilt under a specific theory, as required under *Curiel*." (*People v. Williams*, *supra*, 103 Cal.App.5th at p. 403, rev. granted, original italics.)

"We recognize the burden our holding places on trial courts . . . for a process that requires the court to conduct an evidentiary hearing and engage in independent factfinding in a case in which a petitioner's likelihood of success is very low. However, our Supreme Court has recognized that the prima facie review process may fail to screen out all meritless petitions. [Citation.] The high court also has determined that the Legislature was aware of the 'potential impact [of section 1172.6] on judicial resources' [citation], and has already 'engage[d] in the exact type of cost-benefit assessment and policy determination it was entitled to make' [citation]. Ultimately, the high court has determined that the statute requires issuance of an order to show cause unless the record conclusively establishes a petitioner's ineligibility for relief. [Citation.] A likelihood that a petitioner cannot prevail is insufficient to warrant denial of the petition at the prima facie stage." (*People v. Williams*, *supra*, 103 Cal.App.5th at p. 406, rev. granted.)

Accordingly, we reverse the trial court's ruling and remand the matter for issuance of an order to show cause under section 1172.6, subdivision (c) and an evidentiary hearing pursuant to section 1172.6, subdivision (d). At the evidentiary hearing, the trial court will not be required to credit the allegations in defendant's petition, and it may make factual findings from the trial evidence, including defendant's pretrial admissions and any additional evidence that may be admitted, to determine whether defendant was the actual perpetrator and is guilty beyond a reasonable doubt of second degree murder after the amendments to sections 188 and 189.

## DISPOSITION

The trial court's order of December 13, 2022, denying defendant's petition for resentencing, is reversed and the matter remanded for issuance of an order to show cause and an evidentiary hearing pursuant to section 1172.6.

DETJEN, Acting P. J.

WE CONCUR:

PEÑA, J.

DE SANTOS, J.