Filed 3/25/25  P. v. Gomez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RICHARD GOMEZ,<br><br>    Defendant and Appellant. | E081045<br><br>(Super.Ct.No. RIF2102211)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge.  Affirmed.

Nate Crowley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Daniel Rogers and Amanda Lloyd, Deputy Attorneys General, for Plaintiff and Respondent.

In 2023, Richard Gomez pled guilty to assault with a deadly weapon, and the trial court suspended imposition of sentence and placed him on formal probation for two years.  (Pen. Code, § 245, subd. (a)(1); unlabeled statutory citations refer to this code.)  On appeal, Gomez challenges the trial court's denial of his request for mental health diversion under section 1001.36.[1]  Because the record demonstrates that Gomez failed to carry his burden of showing that a "qualified mental health expert" had opined that the symptoms of his mental disorder "would respond to mental health treatment," we affirm.  (Former § 1001.36, subd. (b)(1)(C).)

BACKGROUND

In June 2021, the People filed a complaint charging Gomez with one count of assault with a deadly weapon and one count of resisting arrest.  (§§ 245, subd. (a)(1), 148, subd. (a)(1).)  The complaint also alleged that in 2010 Gomez was convicted of willful child abuse or endangerment, which qualified as both a prior strike and a prior serious felony.  (§§ 273a, subd. (a), 667, subds. (a)(1), (b)-(i), 1170.12, subds. (a)-(d).)  Before the arraignment, the trial court declared a doubt as to Gomez's competence and appointed three psychologists to evaluate him.  Two of the psychologists opined that Gomez was competent to stand trial, and the third, Dr. Herberth Valle, opined that he was

---

[1]     The Legislature recently amended section 1001.36, and the amendments went into effect on January 1, 2023, after the court denied Gomez's diversion request but before he pled guilty.  (Stats. 2022, ch. 735, § 1, eff. Jan. 1, 2023 to Dec. 31, 2023.)  Our references to "former" section 1001.36 refer to the version of the statute that was in effect when the court ruled on Gomez's request.  (Former 1001.36, Stats. 2022, ch. 47, § 38, eff. June 30, 2022 to Dec. 31, 2022.)

2

not. The trial court found that Gomez was competent to stand trial and resumed the proceedings in September 2021.

The preliminary hearing took place on July 8, 2022. The People presented evidence that Gomez had assaulted a gardener with a knife at a park. According to the police officer who investigated the incident, the gardener was using a leaf blower near the bench where Gomez, who was homeless, was sleeping. Gomez became agitated, pulled out a knife, and "attempted to strike" the gardener with it. The gardener used the leaf blower to swat Gomez's hand away, and Gomez then "kind of chased around the victim . . . and the victim was able to essentially walk away and go down a different area of the park and wait for [the police]." When the officer and his partner located Gomez in a nearby parking lot, Gomez tried to avoid arrest by walking away and gripping the bed of a truck. When a third officer arrived, they were able to pull Gomez from the truck and arrest him.

On July 15, 2022, Gomez filed a motion captioned "Defendant's Prima Facie Showing of Eligibility and Suitability for Mental Health Diversion Pursuant to Penal Code Section 1001.36." Pretrial diversion under section 1001.36 operates to postpone prosecution so that a defendant can undergo mental health treatment with the goal of obtaining dismissal of the charges. (§ 1001.36, subds. (f)(1), (h).) In his motion, Gomez argued that (1) he had been diagnosed with schizophrenia, a qualifying mental disorder under the statute; (2) his symptoms included delusions, paranoia, and hallucinations; (3) his disorder and its symptoms were a significant factor in the charged offenses; and (4)

3

his symptoms would respond to mental health treatment. He also argued that he did not pose an unreasonable risk to public safety, because there was no evidence to suggest that he was likely to commit a super-strike offense. To support his motion, Gomez attached a two-page "Medication Progress Note," which reflected that he had been prescribed antidepressant and antipsychotic medications on a monthly basis while in custody on the current charges. The note contained a section for Gomez's "current medical conditions," and among the conditions listed were diagnoses of schizophrenia and alcohol dependence disorder. The note was dated January 11, 2022, and had been completed by Dr. Probir Paul, a psychiatrist with the County of Riverside.

On August 23, 2022, the trial court held a hearing on whether Gomez could make a "prima facie showing that [he] will meet the minimum requirements of eligibility for diversion." (Former § 1001.36, subd. (b)(3).) The prosecutor stated: "I don't have a good faith argument he's not eligible. We do have a position on suitability we're going to argue." The court granted Gomez's motion, stating: "[H]aving read and considered the . . . defense prima facie motion, I agree with it. At this time I'll make the following findings as to all of his cases. The Court is satisfied he has suffered a mental health disorder identified by the most recent DSM. The Court is satisfied the defendant's mental disorder played a significant role in the commission of the offense as charged. I am satisfied he will not pose an unreasonable risk of danger to public safety. The court will reserve on the issue of suitability."

4

On September 27, 2022, the court referred the matter to the Department of Behavioral Health. On November 15, the department submitted a letter to the court setting out a proposed treatment program "in the event that the court chooses to grant Mr. Gomez the Mental Health Diversion program." The proposed program began with residential treatment, transitioned to treatment in a sober living facility, and concluded with a transfer to the Coachella Valley Rescue Mission, where Gomez would reside "for the remainder of his time in the . . . program."

The court held a hearing on the merits of Gomez's request for diversion on December 13, 2022. Defense counsel began her argument by stating that Gomez "does meet all the [statutory] criteria." She argued that he was a strong candidate for diversion because his schizophrenia and alcohol dependence disorder played a significant role in his charged and prior offenses and because he was motivated to participate in treatment. She also argued that Gomez had no "real violence on his record" and was not likely to commit a super-strike offense if treated in the community.

The prosecutor began his argument by stating that he had "reviewed Mr. Gomez's psychiatric history, which is extensive, and does absolutely support a prong one and two finding, which is why our office did not oppose a prima facie in this case." The prosecutor argued that although Gomez satisfied the first two statutory requirements, he was nevertheless unsuitable for diversion, because he had received mental health treatment on numerous occasions in the past and was still engaging in criminal behavior. According to the prosecutor, in the last five years, Gomez had "[a]massed a substantial

criminal record" despite having received "Emergency Treatment Services" on three occasions and inpatient treatment on two occasions. The prosecutor argued that the proposed treatment program was not suitable, because "we have somebody who, while under close watch by the community and while receiving some level of mental health services, is still committing crimes and still committing a violent act in this case."

Defense counsel acknowledged that Gomez had received mental health treatment in the past, but counsel argued that Gomez would be more receptive to treatment now because his situation had stabilized while he was in custody and on medication.[2]

The court found that Gomez "can[not] be safely treated in the community," denied the request for diversion, and transferred him to mental health court. The court stated: "Given the nature of the conduct and the most recent offense where there was an alleged attack upon a civilian, which, to me, is different than the prior criminal history demonstrated by the various 148s and 69 PCs, picked up by Mr. Gomez in the past, I think that while he could be responsive to treatment, I think that the unsupervised plan in place, once it gets out of residential, would be contrary to the interest of justice . . . ."

---

[2]     Neither defense counsel nor the prosecutor identified the evidence they relied on to argue that Gomez had received mental health treatment in the past. The only evidence Gomez submitted to the court in connection with his diversion request was the medication progress note described above, and the People did not submit any briefing or evidence in support of their opposition. It is possible that counsel based their representations to the court on the summaries of Gomez's mental health records contained in Gomez's competency evaluations, which are included in the appellate record. For example, Dr. Valle states in his evaluation that "Mr. Gomez has 20 treatment episodes. . . . He has received emergency treatment services (three times between 2016-2021) as well as mental health treatment at an inpatient facility (between 2018-2021)."

6

On February 7, 2023, Gomez pled guilty to assault with a deadly weapon in exchange for the dismissal of the resisting arrest charge and the misdemeanor charges in five additional cases pending against him. The court imposed the midterm of three years in prison for the assault but suspended execution of the sentence and placed Gomez on two years of formal probation, subject to certain conditions, including residential mental health treatment.

## DISCUSSION

I.    *Section 1001.36 and mental health diversion*

"Section 1001.36 gives trial courts the discretion to grant pretrial diversion for individuals suffering from certain mental health disorders." (*People v. Frahs* (2020) 9 Cal.5th 618, 626.) The statute defines "'pretrial diversion'" as "the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment." (§ 1001.36, subd. (f)(1).) The maximum period of diversion is two years. (*Id.*, subd. (f)(1)(C)(i).) If the defendant "perform[s] satisfactorily in diversion," then "at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion," and "the arrest upon which the diversion was based shall be deemed never to have occurred." (*Id.*, subd. (h).) The stated purpose of section 1001.36 "is to promote all of the following: [¶] (a) Increased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal

7

justice system while protecting public safety. [¶] (b) Allowing local discretion and flexibility for counties in the development and implementation of diversion for individuals with mental disorders across a continuum of care settings. [¶] (c) Providing diversion that meets the unique mental health treatment and support needs of individuals with mental disorders." (§ 1001.35, subds. (a)-(c).)

Since its enactment in 2018, section 1001.36 has been amended multiple times to "provide[] increasingly detailed guidance for deciding whether a defendant qualifies for diversion." (*Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882, 891 (*Sarmiento*).) The version of the statute that was in effect when Gomez requested diversion provided as follows.

Subdivision (a) of former section 1001.36 provided the authorization for a court to grant pretrial diversion. It stated: "On an accusatory pleading alleging the commission of a misdemeanor or felony offense, the court may, after considering the positions of the defense and prosecution, grant pretrial diversion to a defendant pursuant to this section if the defendant meets all of the requirements specified in paragraph (1) of subdivision (b)."

The "requirements" listed in paragraph (1) of subdivision (b) of the statute were: (1) the defendant "suffers from a mental disorder" identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders; (2) the defendant's mental disorder "was a significant factor in the commission of the charged offense"; (3) "[i]n the opinion of a qualified mental health expert, the defendant's symptoms of the mental disorder motivating the criminal behavior would respond to mental health treatment"; (4)

8

the defendant consents to diversion and waives the right to a speedy trial; (5) the defendant agrees to comply with treatment as a condition of diversion; and (6) the defendant "will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community." (Former § 1001.36, subd. (b)(1)(A)-(F).) Section 1170.18 defines "unreasonable risk of danger to public safety" as "an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667." (§ 1170.18, subd. (c).) The violent felonies covered by that definition are commonly referred to as "super strikes" and include murder, sexually violent offenses, and any serious or violent felony punishable by death or life imprisonment. (§ 667, subd. (e)(2)(C)(iv); see generally *People v. Jefferson* (2016) 1 Cal.App.5th 235, 242.)

In addition to those six requirements, subdivision (c) of former section 1001.36 provided that the trial court must be "satisfied that the recommended inpatient or outpatient program of mental health treatment will meet the specialized mental health treatment needs of the defendant." (Former § 1001.36, subd. (c)(1)(A).)

II.     *Burden of proof and standard of review*

A defendant requesting diversion under section 1001.36 bears the burden of demonstrating entitlement to relief. (See *People v. Brown* (2024) 101 Cal.App.5th 113, 125 [the defendant bears the burden "to establish . . . the enumerated criteria"]; see also Evid. Code, § 500 ["Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or

defense that he [or she] is asserting"].) "We review the trial court's factual findings as to the enumerated statutory criteria for substantial evidence," and we "review the trial court's ultimate decision whether to grant the request, after considering its findings as to each of the relevant criteria, for abuse of discretion." (*People v. Brown*, at p. 121.)

III. *Gomez failed to carry his burden of proof*

Gomez raises four challenges to the trial court's denial of his request for diversion. First, he argues that the denial was based on the court's finding that he posed an "unreasonable risk of danger to public safety" and that the record does not support such a finding, because there is no evidence that he is likely to commit a super-strike offense. (Former § 1001.36, subd. (b)(1)(F).) Second, he argues that by making such a finding, the court "improperly reversed" its prior finding that he had make a prima facie showing of eligibility. Third, Gomez asserts that the court's finding that the "unsupervised" portion of the proposed treatment plan was "contrary to the interest of justice" is not supported by the record, because there was no aspect of his proposed treatment plan that was unsupervised. And fourth, he contends that, if the ruling was not based upon a dangerousness finding but instead upon the court's "residual" discretion to deny diversion, then the court erred by not expressly considering the purposes of mental health diversion, as set forth in section 1001.35. (See *Sarmiento*, *supra*, 98 Cal.App.5th at p. 893 ["Where the court chooses to exercise [its] residual discretion to deny diversion, its statement of reasons should reflect consideration of the underlying purposes of the statute and explain why diversion would not meet those goals"].)

10

The People argue that the trial court did not deny Gomez's request for any of the reasons that Gomez describes but instead correctly determined that the proposed treatment program would not "meet [Gomez's] specialized mental health treatment needs." (Former § 1001.36, subd. (c)(1)(A).) In supplemental briefing, the People further argue that even if the trial court did deny the request on an erroneous basis, the error is harmless because Gomez failed to carry his burden of providing an expert opinion that the symptoms of his schizophrenia "would respond" to mental health treatment. (Former § 1001.36, subd. (b)(1)(C).) We agree with the People on that point, which is dispositive.

Under former section 1001.36, subdivision (a), the trial court was authorized to grant pretrial diversion only if Gomez demonstrated that he "meets all of the requirements specified in paragraph (1) of subdivision (b)." Paragraph (1) of subdivision (b) contains six requirements, one of which is that "[i]n the opinion of a qualified mental health expert, the defendant's symptoms of the mental disorder motivating the criminal behavior would respond to mental health treatment." (Former § 1001.36, subd. (b)(1)(C).) Gomez failed to satisfy that requirement because he did not submit an opinion from a qualified mental health expert that the symptoms of his schizophrenia would respond to mental health treatment. The only evidence that Gomez submitted in support of his request was the medication progress note from Dr. Paul, and that document contains no statements from its author, let alone any statements that could be construed as an opinion that Gomez's symptoms would respond to mental health treatment.

11

On appeal, the appellant bears the burden of establishing both error and prejudice. (*People v. Bunas* (2022) 79 Cal.App.5th 840, 866.) "'This means reversal is appropriate "only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error."'" (*Ibid.* [concluding that the trial court's error in denying the defendant's request for mental health diversion was harmless].) Gomez cannot demonstrate that the errors he alleges are prejudicial, because the record demonstrates that he failed to carry his burden on one of the requirements for diversion. "'No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion.'" (*People v. Zapien* (1993) 4 Cal.4th 929, 976; see also *People v. Brooks* (2017) 3 Cal.5th 1, 39 ["'we review the ruling, not the court's reasoning and, if the ruling was correct on any ground, we affirm'"].) Because the record contains no evidence that Gomez met all of the statutory requirements and because a trial court is not authorized to grant diversion if a defendant does not meet those requirements, the court's ruling was correct and must be affirmed.

Gomez raises several contrary arguments, but we find none of them persuasive. First, he argues that former section 1001.36 did not require "evidence" of the necessary expert opinion; rather, the statute required a defendant seeking diversion to make only a

prima facie showing of eligibility. To support that argument, Gomez relies on subdivision (b)(3) of former section 1001.36, which states: "At any stage of the proceedings, the court may require the defendant to make a prima facie showing that the defendant will meet the minimum requirements of eligibility for diversion and that the defendant and the offense are suitable for diversion. The hearing on the prima facie showing shall be informal and may proceed on offers of proof, reliable hearsay, and argument of counsel. If a prima facie showing is not made, the court may summarily deny the request for diversion or grant any other relief as may be deemed appropriate." (Former § 1001.36, subd. (b)(3); § 1001.36, subd. (e).) Gomez contends that under that provision his counsel's argument that the symptoms of Gomez's schizophrenia would respond to treatment was sufficient to satisfy the expert opinion requirement. We disagree.

The provision that Gomez cites creates a mechanism for screening diversion requests and summarily denying them if the defendant is unable to make a prima facie showing that he or she "will meet" the criteria listed in subdivision (b)(1) of the statute. The provision does not relieve the defendant of the ultimate burden of demonstrating that he or she "meets all of the requirements specified in paragraph (1) of subdivision (b)." (Former § 1001.36, subd. (a); see also *id.*, subd. (b)(1) [stating that "[p]retrial diversion may be granted pursuant to this section if all of the following criteria are met"].) Evidence is required to prove the existence of a fact, and argument from counsel is not evidence. (Evid. Code, § 140; *People v. Kiney* (2007) 151 Cal.App.4th 807, 815

13

["Unsworn statements of counsel are not evidence"].) Counsel's argument was sufficient to make a prima facie showing that Gomez "will meet" the expert opinion requirement, but it was insufficient to carry Gomez's burden of proof at the hearing on the merits of his request. (See *People v. Qualkinbush* (2022) 79 Cal.App.5th 879, 888 [concluding that "the evidence supported a finding in Qualkinbush's favor on [the expert opinion] eligibility factor," because "the psychologist who evaluated Qualkinbush stated in her report that Qualkinbush's symptoms would respond to mental health treatment and that available treatments existed"].)

Next, Gomez argues that if evidence of the expert opinion is required, then such evidence can be found in the medication progress note, the letter from the Department of Behavioral Health setting out the proposed treatment program, and the psychological evaluation submitted by Dr. Valle to assess Gomez's competence to stand trial. Regarding the medication progress note, Gomez argues that although the document does not contain an express opinion that his schizophrenia symptoms would respond to treatment, such an opinion can be inferred from the fact that Dr. Paul "consistently administered [medication] across a 6 month span." According to Gomez, Dr. Paul would not prescribe medication that "he did not believe would lead to a helpful response in symptoms." But we disagree that the necessary opinion can be reasonably inferred from the fact that Gomez was prescribed medication. The note does imply that Dr. Paul believed that the medications were an appropriate form of treatment for Gomez's condition, but Dr. Paul might also believe that treatment was unlikely to succeed. The

14

statute required an expert opinion that Gomez's symptoms would respond to mental health treatment. Because the note contains no indication of how Gomez responded to the medication or how likely any expert believed a favorable response would be, the note does not convey the necessary opinion and thus does not satisfy the expert opinion requirement.

As for the letter describing the proposed treatment program, Gomez points out that it was written by a clinical therapist at the Department of Behavioral Health, and he argues that such a therapist "would not formulate a treatment plan that he did not believe would lead to a response in symptoms." We are not persuaded. The Department of Behavioral Health submitted a proposed treatment program for Gomez because the trial court directed it to do so. As with the medication note, the letter implies that its author believes that the program is an appropriate course of treatment for Gomez's condition, but it does not follow that the author believed that the treatment would succeed. The letter contains no information about Gomez's mental disorder, no indication that the therapist met with or assessed Gomez, and no indication that the therapist holds an opinion as to whether the symptoms of Gomez's schizophrenia would respond to treatment. The letter states that its "purpose" is to "inform the court" of the proposed program "in the event that the court chooses to grant Mr. Gomez the Mental Health Diversion program." The letter does not provide the court with a recommendation for that decision. Because the letter contains no statements that could be construed as an

opinion that the symptoms of Gomez's schizophrenia would respond to treatment, it does not satisfy the statutory requirement.

We also conclude that Dr. Valle's psychological evaluation does not satisfy the statutory requirement. Dr. Valle was appointed to assess Gomez's ability to understand the nature of the criminal proceedings against him and assist his counsel with his defense. Dr. Valle was also tasked with answering the following questions: "(1) Does [Gomez's] mental disorder require medical treatment with antipsychotic medication? (2) Does [Gomez] present, as a result of mental disorder or mental defect, a demonstrated danger of inflicting substantial physical harm on others?" Dr. Valle concluded that Gomez was not competent to stand trial. As to the other two questions, he recommended that Gomez "continu[e] taking psychotropic medication on a regular basis in an effort to become relatively more stable" and participate in "individual/group" therapy "[i]n order to reduce his level of danger." Gomez argues that those two recommendations are "evidence . . . that [his] symptoms would respond to mental health treatment." We disagree. As with the medication note and the letter describing the treatment program, Dr. Valle's evaluation merely describes treatment modalities (i.e., medication and therapy) that would be appropriate for Gomez's condition, but it does not express an opinion that treatment is likely to be efficacious.

On the contrary, as the People point out, in the same paragraph in which he recommended medication and therapy, Dr. Valle also stated that Gomez's "relative lack of insight into his mental illness and ongoing psychiatric symptoms may prevent him

16

from participating in treatment and improving his clinical presentation." That is, Dr. Valle himself expressed skepticism about whether Gomez's symptoms would respond to mental health treatment. Read as a whole, Dr. Valle's evaluation cannot be reasonably interpreted as expressing an opinion that Gomez's symptoms "would respond" to treatment. (Former § 1001.36, subd. (b)(1)(C).)

Gomez argues that requiring a "rigid specifically worded expert opinion that symptoms would respond to mental health treatment, prepared specifically for a diversion request, . . . is contrary to Legislative intent to apply mental health diversion as broadly as possible" and places "a heavy, and often unnecessary, burden on public resources for indigent defense clients." But we are not requiring that the opinion must contain specific words or even be prepared in connection with the diversion request. Rather, we are requiring only what the statute requires, namely, an expert opinion that the symptoms of Gomez's schizophrenia would respond to mental health treatment. Gomez's argument that the statutory requirement places an unnecessary or excessive burden on public resources would be more appropriately addressed to the Legislature. (See *Bodinson Mfg. Co. v. California E. Com.* (1941) 17 Cal.2d 321, 325.)

Finally, Gomez argues that the People forfeited their argument that he failed to carry his burden of proof, because the prosecutor conceded Gomez's eligibility for diversion at the prima facie hearing. Gomez further argues that the prosecutor's concession denied him an "opportunity . . . to address any potential shortcomings as to the expert opinion eligibility factor," and as a result, the appropriate remedy is to

17

"remand the matter for a full hearing on the issue of the opinion of a qualified mental health expert." We disagree.

The record does not support Gomez's claim that the People conceded his eligibility. Gomez points to the fact that the prosecutor told the court at the prima facie hearing, "I don't have a good faith argument he's not eligible." However, context makes clear that the statement applied only to Gomez's prima facie showing of eligibility, not to the ultimate issue of eligibility. The statement was made at the hearing on Gomez's "eligibility motion for a prima facie showing on mental health diversion," and the prosecutor who appeared for the merits hearing clarified that "our office did not oppose a prima facie in this case." Moreover, the prosecutor's argument at the merits hearing made clear that the prosecution did not concede that Gomez had met the statutory requirements for diversion. The prosecutor argued against diversion because Gomez had received mental health treatment on numerous occasions in the past and was still engaging in criminal behavior. That argument put Gomez on notice that he needed to show that his condition would respond to treatment this time even though it had resisted treatment in the past.

Because the People did not concede the issue, we reject Gomez's assertion that he is entitled to a new hearing and an opportunity to obtain the required opinion. The need to obtain an expert opinion was clear from the terms of the statute, the prosecution expressly contested the issue of whether Gomez's symptoms would respond to treatment,

and remand for another hearing would amount to giving Gomez a second chance to carry his burden of proof.**3**

For all of these reasons, we express no opinion on whether the trial court's stated grounds for denying Gomez's request were erroneous.  Even if they were, any error was harmless because Gomez failed to demonstrate that he satisfied one of the statutory requirements for diversion.

DISPOSITION

The order denying Gomez's request for mental health diversion is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
                                                                                              J.

We concur:

RAMIREZ
             P. J.

CODRINGTON
             J.

---

**3**     We requested supplemental briefing from the parties regarding the effect on this appeal, if any, of the recent amendments to section 1001.36.  As relevant here, the amendments separated the six requirements in former section 1001.36 into two "eligibility" requirements and four "suitability" requirements, with the expert opinion requirement falling into the latter category.  (§ 1001.36, subds. (b)-(c).)  Because the expert opinion remains necessary under the current version of the statute, the amendments have no impact on this appeal.